[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13724
_____

D.C. Docket No. 9:13-cv-81259-RNS

GLENAAN ROBBINS,
individually and on behalf of all others similarly situated,

Plaintiff-Appellant,

versus

GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,
a foreign corporation,

Defendant-Appellee.

_____

No. 14-13725
_____

D.C. Docket No.  9:14-cv-80279-KLR

SENDY ENIVERT,
individually and on behalf of all those similarly situated,

Plaintiff-Appellant,

versus

PROGRESSIVE SELECT INSURANCE COMPANY,
a foreign corporation,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 30, 2015)

Before ED CARNES, Chief Judge, MARTIN, Circuit Judge, and THAPAR,[*] District Judge.

ED CARNES, Chief Judge:

This consolidated appeal by two plaintiffs presents the issue of what limits the Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730–627.7405, places on an insured's personal injury protection (PIP) benefits where no medical provider has made any determination about whether the insured's injury was an emergency medical condition. The applicable statutory provisions are ambiguous

_____

[*] Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

but the legislative purpose shown in the type of material that Florida courts rely on to resolve ambiguities is not.

## I.

Since the 1980s, the Florida Motor Vehicle No-Fault Law has required that automobile insurance policies provide personal injury protection benefits "to a limit of $10,000 for loss sustained . . . as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle." 1987 Fla. Sess. Law Serv. Ch. 87-226 (West); see Fla. Stat. § 627.736(1)(a) (2015).  The Florida legislature amended the No-Fault Law in 2012.  See 2012 Fla. Sess. Law Serv. Ch. 2012-197 (West).  Those amendments added two subparagraphs to § 627.736(1)(a), one requiring:

> 3.  Reimbursement for services and care provided . . . up to $10,000 if a [physician, dentist, physician assistant, or advanced registered nurse practitioner] has determined that the injured person had an emergency medical condition.[1]

and the other providing that:

> 4. Reimbursement for services and care provided . . . is limited to $2,500 if a [physician, dentist, chiropractic physician, osteopathic physician, physician assistant, or advanced registered nurse practitioner] determines that the injured person did not have an emergency medical condition.

---

[1]  The statute defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:  (a) [s]erious jeopardy to patient health[;] (b) [s]erious impairment to bodily functions[; or] (c) [s]erious dysfunction of any bodily organ or part."  Fla. Stat. § 627.732(16).

3

Fla. Stat. § 627.736(1)(a)(3)–(4) (emphases added).  Unfortunately, the amended statute says nothing about what the reimbursement limit is if no listed provider has made any determination about whether the injured person's medical condition was an emergency.  That is why this case is here.

Glenaan Robbins is insured under an auto insurance policy issued by Garrison Property and Casualty Insurance Company (Garrison).  Sendy Enivert is insured under a similar policy issued by Progressive Select Insurance Company (Progressive).  Both policies are governed by Florida law.  After they were injured in separate car accidents in 2013, Robbins and Enivert sought reimbursement for medical expenses from their insurers.  Neither of them submitted a medical provider's determination about whether she had suffered an emergency medical condition.  Relying on their interpretation of Fla. Stat. § 627.736, as amended, Garrison and Progressive limited Robbins' and Enivert's benefits to $2,500.

Robbins and Enivert each filed in the same district court a purported class action challenging her insurer's interpretation of § 627.736.  Each lawsuit sought a declaratory judgment that the insured was entitled to $10,000 in medical benefits because "no determination was made that [she] did not have an emergency medical condition."  Each also sought injunctive relief against future violations of the statute, payment of unpaid medical benefits, and attorney's fees.

4

The lawsuits were assigned to two different judges who entered separate orders dismissing them.  Both orders reached the same conclusion, which is that absent an emergency medical determination by one of the providers listed in § 627.736(1)(a)(3), the higher limit of $10,000 in benefits does not apply.  The judge in the Robbins case concluded that, absent any determination about whether the condition was an emergency, the insured was entitled to up to $2,500 in benefits.  The judge in the Enivert case also concluded that the insured was not entitled to more than $2,500 in benefits; the insurance company in that case contends that the judge actually concluded that without a medical emergency determination the insured is not entitled to any benefits.[2]  Both plaintiffs filed appeals, which we consolidated at their request.[3]

## II.

We review de novo a Rule 12(b)(6) dismissal, "accepting the allegations in the complaint as true and construing them in the light most favorable to the

---

[2] The judge in the Enivert case said that "[t]he PIP statute, read in its entirety, clearly indicates that a medical provider's determination is required in order to receive reimbursement under either subsection of the statute" and that because "[a] medical provider did not determine that [the insured] had an [emergency medical condition,]" she was "not entitled to the full $10,000 in benefits . . . ."  That could mean that the insured was entitled to only $2,500 in benefits, or it could mean, as Progressive suggests, that she was entitled to no benefits at all.  We need not decide exactly what the district judge meant, however, because our review is de novo in any event.

[3] We asked the parties to provide us with supplemental briefing addressing whether the plaintiffs had satisfactorily alleged the amount in controversy required for federal jurisdiction.  After reviewing their submissions, we are convinced that the plaintiffs have satisfied the requirements set forth in 28 U.S.C. § 1332(d)(2).

plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). We also review de novo a district court's interpretation of a statute. Id. We construe a Florida statute according to Florida's rules of statutory interpretation, not federal rules, when those rules differ. See Allen v. USAA Cas. Ins. Co., 790 F.3d 1274, 1279 (11th Cir. 2015).

## A.

Under Florida law, we must "give effect to the legislative intent of the statute." Belanger, 556 F.3d at 1155 (citing Arnold, Matheny & Eagan, P.A. v. First Am. Holdings, Inc., 982 So. 2d 628, 633 (Fla. 2008)). To find that intent, we begin where Florida courts do, which is with the statute's plain language. See Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006). "When the statute is clear and unambiguous, [Florida] courts will not look behind [its] plain language for legislative intent." Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005). But when the statutory language is ambiguous, Florida courts may "resort to the rules of statutory construction, which permit [them] to examine the legislative history to aid in [their] determination regarding legislative intent." Diamond Aircraft Indus., Inc. v. Horowitch, 107 So. 3d 362, 367 (Fla. 2013).

The amended language in § 627.736 does not address the situation presented here, where no medical provider has determined if the insured's medical condition was, or was not, an emergency. According to the insurer Garrison, "[a] plain

6

reading of the statute demonstrates that the $10,000 of coverage is available only if a physician or other provider listed has determined that the injured person had an emergency medical condition." Garrison Br. at 9 (quotations and alterations omitted). The statutory language, however, plainly does not say that. It would have been a simple matter for the legislature to have said exactly that, but it did not do so. The insurer Progressive, taking a bolder tack, insists that the "[s]tatute is clear; if there is no determination by a qualified provider — that an insured either had or did not have an [emergency medical condition] — the [s]tatute does not provide any level of benefits." Progressive Br. at 16. But the statute is anything but clear. Although we agree with the defendants and the district courts that the lawsuits ought to have been dismissed, we disagree with their interpretations of the statutory scheme.

It is "axiomatic that all parts of a statute must be read together in order to achieve a consistent whole." Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So. 2d 452, 455 (Fla. 1992). "Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another." Id. Neither of the defendants' interpretations does that. Garrison's position would give full effect to subparagraph (1)(a)(3) and no effect to (1)(a)(4). But we cannot "engage in a narrow, limited reading of an individual subsection . . . which would render another coequal provision of the

statute entirely nugatory." Am. Home Assurance Co. v. Plaza Materials Corp., 908 So. 2d 360, 366 (Fla. 2005); see also State v. Goode, 830 So. 2d 817, 824 (Fla. 2002) ("[T]he Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless.").

Progressive asks us to read into the statute an affirmative obligation on the part of the insured to obtain a medical provider's determination one way or the other about whether the condition was an emergency in order to receive any benefits at all. But that obligation is not in the statute and we cannot add it. See B.C. v. Fla. Dep't of Children & Families, 887 So. 2d 1046, 1052 (Fla. 2004) ("[We are not] permitted to add to a statute words that were not placed there by the Legislature."); State v. City of Fort Pierce, 88 So. 2d 135, 137 (Fla. 1956) ("It is not the province of this Court to rewrite the acts of the Legislature."). The statutory language simply does not provide an answer to the question presented here.

Which leads to Robbins and Enivert's argument that subparagraphs (1)(a)(3) and (1)(a)(4) "are directly contradictory, essentially canceling each other out" and "leav[ing] undisturbed the pre-existing overall maximum of $10,000" regardless of whether there is any determination about an emergency. Appellants' Br. at 11. But the Florida Supreme Court has rejected negation arguments. See Am. Home Assurance Co., 908 So. 2d at 368 ("It would defy logic to conclude that the

8

Legislature intended two contemporaneous amendments to negate one another.");

Alexdex Corp. v. Nachon Enters., Inc., 641 So. 2d 858, 862 (Fla. 1994) (rejecting

an interpretation that would "ignore the latest legislative expression on the subject

and run counter to our principle . . . that a statute should not be interpreted in a

manner that would deem legislative action useless").

B.

"[W]here the plain text of the statute is in inescapable conflict," Am. Home

Assurance Co., 908 So. 2d at 368, as it is here, the Florida Supreme Court has

repeatedly looked to legislative staff analyses, which it has described as "one

touchstone of the collective legislative will," in order to discover legislative intent,

White v. State, 714 So. 2d 440, 443 n.5 (Fla. 1998); see Diamond Aircraft Indus.,

107 So. 3d at 367.  We do that here.

The Florida legislature's purpose in amending the Motor Vehicle No-Fault

Law in 2012 was to reduce the payment of fraudulent claims in order to lower

insurance premiums.  See Staff of H.R. Subcomm. on Ins. & Banking, Final B.

Analysis, H.B. 119, at 6 (Fla. 2012) (describing a study produced by the Florida

Office of Insurance Regulation, which found that "PIP fraud is a significant issue"

throughout the state); id. at 14 (noting that "[t]o the extent that the [amendments]

eliminate[ ] fraud and abuse in the PIP system, the cost of PIP insurance will

decrease for Florida motorists"); see also Staff of S. Banking & Ins. Comm., H.B.

9

119 B. Summary, at 2 (Fla. 2012) (stating that the amendments "contain[ ] numerous provisions designed to curtail PIP fraud").

One thing that the amendments did to achieve that purpose was "revise[ ] [the] personal injury protection (PIP) provisions [of the statute], making the amount of the medical benefit dependent upon the severity of the injury." Final B. Analysis at 9; see also S. B. Summary at 1 ("The bill applies two different coverage limits for PIP medical benefits, based upon the severity of the medical condition of the individual."). What the legislature intended was that "[t]he full $10,000 PIP medical benefit" would be "only available if [a listed medical provider] determines that the insured has an emergency medical condition. Otherwise, the PIP medical benefit is limited to $2,500." Staff of S. Banking & Ins. Comm., H. Message Summary, H.B. 119, at 1 (Fla. 2012) (quotation marks omitted); see also S. B. Summary at 1 ("An individual may receive up to $10,000 in medical benefits . . . if [a listed medical provider] has determined that the injured person had an emergency medical condition," but for "[a]n individual who is not diagnosed with an emergency medical condition, the PIP medical benefit limit is $2,500.").

The legislative history clearly shows that the Florida legislature sought to reduce fraudulent claims by making the full $10,000 amount of benefits available only to those insureds who suffered severe injuries, a restriction defined into the

10

term "emergency medical condition."  See supra n.1.  Allowing an insured to escape that restriction on the higher limit would defeat the legislative intent and policy behind the amendments, which we are bound to honor.  See Byrd v. Richardson–Greenshields Sec., Inc., 552 So. 2d 1099, 1102 (Fla. 1989) ("[O]ur obligation is to honor the obvious legislative intent and policy behind an enactment . . . .").

For these reasons, we hold that Fla. Stat. § 627.736, as amended, limits an insurer's obligation to provide personal injury protection benefits to $2,500, unless one of the medical providers listed in subparagraph (1)(a)(3) has determined that the injured person had an emergency medical condition.  Because neither Robbins' nor Enivert's claim was supported by such a determination, neither Garrison nor Progressive violated Fla. Stat. § 627.736 by limiting benefits to $2,500.  The district court judges were correct to dismiss the lawsuits.

**AFFIRMED.**