LEVINE, J.
The issue presented is whether a qualified medical provider must determine that an emergency medical condition exists for benefits to exceed $2,500 under Florida’s PIP statute.- Stated in another way, if either there has been no determination of whether the insured has an emergency medical condition or there has been a determination that the insured does not have an emergency medical condition, would the benefits under PIP be limited to $2,500. We find that the statute requires a determination of an emergency medical condition for the benefits to be up to $10,000. Further, we find that if either there is no determination of whether the insured has an emergency medical condition or there has been a determination that the insured does not have an emergency medical condition, then the benefits would be limited to $2,500.
Carmen Santiago, the insured, was injured in a motor vehicle accident. She went to an urgent care center due to pain in her cervical region and right shoulder. The doctor referred her to appellant for physical therapy. Appellant then submitted bills for payment to appellee USAA, the insurer, but USAA provided no additional payment, explaining that, pursuant to section 627.736(l)(a)(4), Florida Statutes, $2,500 had already been reimbursed under the policy. USAA requested that appellant provide “the determination of the patient’s emergency medical condition by a provider authorized” so that USAA could make any additional reimbursement decisions.
Appellant sued USAA for breaching the insurance contract by failing to issue full payment for the medical treatment appellant provided. Subsequently, appellant sent USAA a note from Dr. Chang, the insured’s treating physician, which stated that he considered the insured to have an emergency medical condition. Upon receipt' of this documentation, USAA paid all outstanding charges under the policy until the limits were reached. USAA moved for summary judgment, which the trial court granted, finding that the provisions of section 627.736(l)(a)(3)-(4) limit medical benefits to $2,500 until there is a determination that the insured had an emergency medical condition. The trial court also determined USAA properly requested that appellant provide information regarding the insured’s medical condition, pursuant to section 627.736(6)(b), to justify additional reimbursement. The trial court disagreed with appellant that USAA waived any defenses because it paid the medical reimbursement after the suit was filed, and determined there was no confession of *90 judgment because USAA did not wrongfully withhold payment.
The trial court also certified a question of great public importance, which we rephrase as follows:
IN AN ACTION BY AN ASSIGNEE FOR NO-FAULT INSURANCE BENEFITS UNDER A POLICY OF MOTOR VEHICLE INSURANCE, ARE BENEFITS ABOVE $2,500 ONLY AVAILABLE WHERE THERE HAS BEEN A DETERMINATION BY A MEDICAL PROVIDER AUTHORIZED BY STATUTE THAT AN EMERGENCY MEDICAL CONDITION EXISTS, AS DEFINED IN THE FLORIDA NO-FAULT LAW?
Appellant appeals the decision of the trial court.
Our “standard of review is de novo, because this is an appeal from a summary judgment and, also, because the substantive question posed is a legal question of statutory construction.” Progressive Auto Pro Ins. Co. v. One Stop Med., Inc., 985 So.2d 10, 12 (Fla. 4th DCA2008).
The Florida Motor Vehicle No-Fault Law requires that automobile insurers provide personal injury protection “to a limit of $10,000 in medical and disability benefits ... resulting from bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle.” § 627.736(1), Fla. Stat. (2013).
Section 627.736(l)(a)(3)-(4), Florida Statutes (2013), states,
3. Reimbursement for services and care provided in subparagraph 1. or sub-paragraph 2. up to $10,000 if a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, a physician assistant licensed under chapter 458 or chapter 459, or an advanced registered nurse practitioner licensed under chapter 464 has determined that the injured person had an emergency medical condition.
Reimbursement for services and care provided in subparagraph 1. or subpar-agraph 2. is limited to $2,500 if any provider listed in subparagraph 1. or subparagraph 2. determines that the injured person did not have an emergency medical condition.
(emphasis added). An emergency medical condition is
a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:
(a) Serious jeopardy to patient health.
(b) Serious impairment to bodily functions.
(c) Serious dysfunction of any bodily organ or part.
§ 627.732(16), Fla. Stat. (2013).
“It is a fundamental principle of statutory interpretation that legislative intent is the ‘polestar’ that guides this Court’s interpretation.” Borden v. East-European Ins. Co., 921 So.2d 587, 595 (Fla.2006). The best method to determine the intent of the legislature is to “look to the actual language used in the statute.” Daniels v. Fla. Dep’t of Health, 898 So.2d 61, 64 (Fla.2005). Clearly, “[wjhen the statute is clear and unambiguous, courts will not look behind the statute’s plain language for legislative intent or resort to rules of statutory construction to ascertain intent.” Id. However, where the statute is ambiguous, the court “may resort to the rules of statutory construction, which permit [the court] to examine the legislative history to aid in [the] determination regarding legislative intent.” Diamond Aircraft Indus., Inc. v. Horowitch, 107 So.3d *91 362, 367 (Fla.2013). When construing different parts of a statute, “[i]t is axiomatic that all parts of a statute must be read together in order to achieve a consistent whole. Where possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.” Knowles v. Beverly Enterprises-Florida, Inc., 898 So.2d 1, 6 (Fla.2004) (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla.1992)).
Appellant claims that the $2,500 statutory limit applies only when a statutorily authorized provider affirmatively determines that there is no emergency medical condition. USAA, conversely, argues that the $2,500 limit applies unless an authorized medical provider affirmatively determines that there is an emergency medical condition and notifies the insurer of that condition.
The statute addresses the situation where there has been an affirmative determination of an emergency medical condition, authorizing up to $10,000. § 627.736(1)(a)(3), Fla. Stat. The statute also addresses the situation where there has been an affirmative determination of no emergency medical condition, authorizing up to only $2,500. § 627.736(1)(a)(4), Fla. Stat. However, nowhere in the statute does it address the situation where no determination of emergency medical condition has been made. We therefore find the statute to be ambiguous, compelling us to resort to other methods to determine the intent of the legislature. See W. Fla. Reg’l Med. Ctr., Inc. v. See, 79 So.3d 1, 9 (Fla.2012).
We read the two provisions of the statute in para materia. “The canon is ... based upon a realistic assessment of what the legislature ought to have meant. It rests on two sound principles: (1) that the body of the law should make sense, and (2) that it is the responsibility of the courts, within the permissible meanings of the text, to make it so.” Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 252 (2012).
The case of Robbins v. Garrison Property & Casualty Insurance Co., 809 F.3d 583 (11th Cir.2015), is most instructive. In that case, two separate plaintiffs proceeded with a PIP claim exceeding $2,500 where no medical provider had made any determination regarding whether each insured’s injury was “an emergency medical condition.” The court in Robbins recognized that both the insurer and the insureds were asking the court to impermis-sibly modify the statute. The insurer asked the court “to read into the statute an affirmative obligation on the part of the insured to obtain a medical provider’s determination one way or the other about whether the condition was an emergency in order to receive any benefits at all.” Id. at 586. But the court refrained from doing so because “that obligation is not in the statute and we cannot add it.” Id.; see also B.C. v. Fla. Dep’t of Children & Families, 887 So.2d 1046, 1052 (Fla.2004) (“[W]e [are not] permitted to add to a statute words that were not placed there by the Legislature.”); State v. City of Fort Pierce, 88 So.2d 135, 137 (Fla.1956) (“It is not the province of this Court to rewrite the acts of the Legislature.”). The insureds in Robbins asked the court to read subparagraphs (1)(a)(3) and (1)(a)(4) out of the statute, saying they “essentially can-celled] each other out,” resulting in a preexisting limit of $10,000 where no determination of an emergency is made. 809 F.3d at 587: But the court also rejected this interpretation stating, “[T]he Florida Supreme Court has rejected negation arguments.” Id. (citing Am. Home Assurance Co., 908 So.2d 360, 368 (Fla.2005); Alexdex *92 Corp. v. Nachon Enters. Inc., 641 So.2d 858, 862 (Fla.1994)).
The Eleventh Circuit, confronted with a statute that did not “provide an answer to the question presented,” looked to the legislative history to help elucidate the legislative intent. Id. The court found:
The Florida legislature’s purpose in amending the Motor Vehicle No-Fault Law in 2012 was to reduce the payment of fraudulent claims in order to lower insurance premiums_
The legislative history clearly shows that the Florida legislature sought to reduce fraudulent claims by making the full $10,000 amount of benefits available only to those insureds who suffered severe injuries, a restriction defined into the term “emergency medical condition.” Allowing an insured to escape that restriction on the higher limit would defeat the legislative intent and policy behind the amendments, which we are bound to honor.
For these reasons, we hold that Fla. Stat. § 627.736, as amended, limits an insurer’s obligation to provide personal injury protection benefits to $2,500, unless one of the medical providers listed in subparagraph (l)(a)(3) has determined that the injured person had an emergency medical condition.
Id. at 587-88 (citations omitted).
We agree that section 627.736 “limits an insurer’s obligation to provide personal injury protection benefits to $2,500, unless one of the medical providers listed in sub-paragraph (l)(a)(3) has determined that the injured person had an emergency medical condition.” See id. at 588.
This case is somewhat different from Robbins however because appellant eventually submitted a determination that the insured had an emergency medical condition, whereas in Robbins, the insured never submitted any determination of emergency medical condition. • Nevertheless, USAA requested a written report of the insured’s medical condition to determine whether appellant was entitled to a payment exceeding the $2,500 statutory limit. Appellant initially failed to respond to this request, and instead submitted a demand letter for the payment of benefits. It was only after appellant filed suit that appellant submitted Dr. Chang’s determination that the insured had an emergency medical condition. Upon receiving the determination, USAA paid all outstanding charges until reaching the policy limits. We must therefore consider whether USAA had the right to receive a written report of insured’s condition prior to issuing a payment in excess of the $2,500 statutory limit.
We find that USAA had the right, pursuant to section 627.736(6)(b), to request a written report of the insured’s condition. Under section 627.736(6)(b),
Every [qualifying medical provider] shall, if requested by the insurer against whom the claim has been made, furnish a written report of the ... condition .... If an insurer makes a written request for documentation or information under this paragraph within 30 days after having received notice of the amount of a covered loss under paragraph (4)(a), the amount or the partial amount that is the subject of the insurer’s inquiry is overdue if the insurer does not pay in accordance with paragraph (4)(b) or within 10 days after the insurer’s receipt of the requested documentation or information, whichever occurs later.
(emphasis added).
“Based on the plain language of this subsection, as well as the title of the subsection, it is clear that the focus of this provision is the discovery of documents regarding the treatment and related bill *93 ing of the individual injured person.” State Farm Mut. Auto. Ins. Co. v. Delray Med. Ctr., 178 So.3d 511, 515 (Fla. 4th DCA 2015). In the instant ease, USAA ■appropriately requested a report on the insured’s medical condition. The report could likely have impacted USAA’s evaluation of whether a qualified medical provider had determined that the insured’s injury constituted an emergency medical condition.
■ Consequently, appellant’s demand letter was premature. Although appellant filed a demand letter for payment of benefits, appellant failed to respond to USAA’s request for discovery pursuant to section 627.736(6)(b). .
In summary, as to the certified question, we answer that benefits above $2,500 are available only where a medical provider determines an emergency medical condition exists. Where a medical provider does not make a determination that there is an emergency medical condition, benefits above $2,500 are not available.

Affirmed.

GROSS, J., and LINDSEY, NORMA S., Associate Judge, concur.