# Third District Court of Appeal

## State of Florida

Opinion filed February 15, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1067
Lower Tribunal No. 13-4491
_____

**Progressive American Insurance Company,**
Appellant,

vs.

**Eduardo J. Garrido D.C. P.A., etc.,**
Appellee.

An Appeal from the County Court for Miami-Dade County, Michaelle Gonzalez-Paulson, Judge.

Kubicki Draper, P.A., and Betsy E. Gallagher and Michael C. Clarke (Tampa), for appellant.

Christian Carrazana, P.A., and Christian Carrazana, for appellee.

Before SUAREZ, C.J., and LAGOA and SCALES, JJ.

SCALES, J.

Appellant, defendant below, Progressive American Insurance Company ("Progressive"), appeals a final summary judgment of the Miami-Dade County Court that both (i) declared a portion of Florida's PIP statute unconstitutional as applied to chiropractors; and (ii) determined that, in the absence of an "emergency medical condition" diagnosis, Florida's PIP statute allows an insured to recover up to $10,000 in PIP benefits. The county court certified the constitutional issue to us as a question of great public importance. We accepted jurisdiction,[1] and we reverse the county court's final summary judgment.

## I. Facts

In February of 2013, Progressive's insured, Alejandro Godoy, was involved in a car accident in Miami. Godoy suffered personal injuries and began treatment with chiropractor Eduardo Garrido, the Appellee and plaintiff below. Godoy assigned to Garrido his PIP benefits under Godoy's Progressive policy, and Garrido submitted to Progressive invoices totaling $6,075.12 for his treatment of Godoy.

Progressive paid Garrido $2,500 in PIP benefits, but declined to pay Garrido any further PIP benefits because there had been no determination made by an authorized physician under section 627.736(1)(a)3. of the Florida Statutes that Godoy suffered an emergency medical condition ("EMC").[2] Progressive based its

---

[1] Fla. R. App. P. 9.160(e)(2).

2

refusal to pay in excess of $2,500 in benefits on section 627.736(1)(a)4., which limits PIP benefits to $2,500 "if a provider . . . determines that the injured person did not have an emergency medical condition." Progressive reasoned that, because no authorized physician had diagnosed Godoy with an EMC, its PIP liability was limited to $2,500.

In response to Progressive's refusal to pay Garrido more than $2,500, Garrido filed the instant declaratory judgment action in Miami-Dade County Court. Garrido's complaint contained three counts. In Count I, Garrido sought a declaration that the full $10,000 PIP benefit applied to the claim at issue, despite the absence of a determination by an authorized medical provider that Godoy suffered an EMC.

In Counts II and III of his complaint, Garrido alleged that the exclusion of chiropractors from the list of professionals, scheduled in section 627.736(1)(a)3., that are authorized to diagnose a patient with an EMC is unconstitutional as applied to chiropractors on both equal protection and due process grounds. After the inception of his lawsuit, Garrido filed an affidavit in support of his motion for summary judgment in which he purported to have diagnosed Godoy with an EMC,

---

[2] An emergency medical condition is defined as "a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) Serious jeopardy to patient health. (b) Serious impairment to bodily functions. (c) Serious dysfunction of any bodily organ or part." § 627.732(16), Fla. Stat. (2013).

despite not being authorized to provide such diagnosis under section 627.736(1)(a)3.

The trial court entered final summary judgment for Garrido, concluding that the statute was unconstitutional as applied to chiropractors on both equal protection and due process grounds. The trial court also determined that Garrido's diagnosis of Godoy with an EMC was "legally sufficient" to trigger the availability of Progressive's PIP policy limit of $10,000, and certified to us the following question of great public importance:

> IS THE OMISSION OF CHIROPRACTORS FROM THE LIST OF HEALTH CARE PROFESSIONALS AUTHORIZED TO DIAGNOSE AN EMERGENCY MEDICAL CONDITION UNDER § 627.736(1)(a)(3), FLA. STAT. (2013) [stet] UNCONSTITUIONAL AS APPLIED TO CHIROPRACTORS ON THE GROUNDS OF EQUAL PROTECTION AND DUE PROCESS UNDER THE FLORIDA CONSTITUTION?

A separate panel of this Court accepted jurisdiction. We answer the question in the negative and reverse the trial court's summary final judgment for Garrido.

**II. Analysis[3]**

A. Relevant Statutory Backdrop

---

[3] In all respects, the trial court's grant of summary judgment is based on pure questions of law. Therefore, we review the judgment de novo. Scott v. Williams, 107 So. 3d 379, 384 (Fla. 2013); Major League Baseball v. Morsani, 790 So. 2d 1071, 1074 (Fla. 2001).

For decades, in addition to providing death benefits under section 627.736(1)(c), all PIP insurance policies written in Florida have been required to provide up to $10,000 in benefits for an insured's covered medical expenses under section 627.736(1)(a) and for an insured's loss of income and earning capacity under section 627.736(1)(b).

In 2012, the Florida Legislature enacted Laws of Florida 2012-197 (the "2012 PIP Act") which, among other things, amended the PIP statute's medical benefits provisions to limit the availability of the full $10,000 in PIP medical benefits to only those injured persons diagnosed with an EMC. The Legislature accomplished this change by adding two subsections to section 627.736(1)(a) that are relevant to this case: (i) section 627.736(1)(a)3. specifically identifies which medical professionals can make an EMC diagnosis so as to trigger the $10,000 benefit availability; and (ii) section 627.736(1)(a)4. limits available PIP medical benefits to $2,500 if a medical provider determines that the injured person does not have an EMC. 2012 PIP Act; § 10.

Section 627.736(1)(a)3. provides that up to $10,000 in PIP medical benefits are available if the injured person is diagnosed with an EMC by one of the following professionals: (i) a physician licensed under chapter 458 (medical doctor) or chapter 459 (osteopathic physician), (ii) a dentist licensed under chapter

5

466, (iii) a physician assistant licensed under chapter 458 or 459, or (iv) an advanced registered nurse licensed under chapter 464.

Section 627.736(1)(a)4. limits PIP medical benefits to $2,500 if any medical provider (including chiropractic physicians licensed under chapter 460) eligible to receive PIP reimbursement benefits determines that an injured person does not have an EMC. The statute, however, is silent as to what PIP benefits are available in the event of *no* EMC diagnosis whatsoever.

B. The Trial Court's Order

Under this statutory scheme a chiropractor is authorized to make a no-EMC diagnosis, but is not authorized to make a determination that an injured person has an EMC. Determining as a matter of law that the statutory scheme treats chiropractors differently from what it characterized as similarly situated persons – i.e., licensed medical providers who are authorized to provide EMC diagnoses – the trial court concluded that this distinction violates chiropractors' equal protection rights because there exists no rational basis for the distinction. Underpinning the trial court's conclusion is its determination that the legitimate governmental interest advanced by the statute "is to provide greater coverage where the injured person had an EMC." The trial court also summarily concluded that the statutory scheme violates chiropractors' due process rights because the statute lacks a rational basis under an equal protection analysis.

As a matter of statutory construction, the trial court also determined that, because no medical provider issued either an EMC or no-EMC diagnosis to Godoy, section 627.736(1)(a) requires Progressive to make available the full $10,000 in PIP medical benefits.

C. The Constitutional Issue – The Certified Question

*1. The Rational Basis Test in an Equal Protection Challenge*

We note that the trial court employed the appropriate test to determine the statute's constitutionality. A court must analyze an equal protection challenge that does not involve a fundamental right or suspect classification under the rational basis test. Estate of McCall v. U.S., 134 So. 3d 894, 901 (Fla. 2014). "To satisfy the rational basis test, a statute must bear a rational and reasonable relationship to a legitimate state objective, and cannot be arbitrarily or capriciously imposed." Id.[4]

The Legislature has the power to establish classifications, to make distinctions among persons or groups, without running afoul of equal protection law. Hechtman v. Nations Title Ins. of N.Y., 840 So. 2d 993, 996-97 (Fla. 2003) (upholding under rational basis test distinction between attorney and non-attorney title insurance agents); State Dep't of Ins. v. Keys Title & Abstract Co., 741 So. 2d 599, 601-02 (Fla. 1st DCA 1999). Courts "are obligated to accord legislative acts a

---

[4] As the trial court notes in its order, a separate due process analysis is unnecessary because the equal protection and substantive due process analyses mirror each other. Warren v. State Farm Mut. Auto. Ins. Co., 899 So. 2d 1090, 1096 (Fla. 2005).

presumption of constitutionality and to construe challenged legislation to effect a constitutional outcome whenever possible." Fla. Dep't of Revenue v. Howard, 916 So. 2d 640, 642 (Fla. 2005). There is a strong presumption of validity if there is a rational relationship between the disparity of treatment of those persons or groups and a legitimate governmental objective. City of Fort Lauderdale v. Gonzalez, 134 So. 3d 1119, 1121 (Fla. 4th DCA 2014) *citing* Heller v. Doe, 509 U.S. 312, 319-20 (1993). Some measure of disparate treatment or inequality is constitutionally tolerable. Duncan v. Moore, 754 So. 2d 708, 712 (Fla. 2000); Acton v. Ft. Lauderdale Hosp., 440 So. 2d 1282, 1284 (Fla. 1983). The burden on the plaintiff, therefore, is to demonstrate that there is no rational basis for the alleged disparity by showing that the statute intentionally and improperly treats him, her or it in a different manner from similarly situated persons or groups. Miller v. State, 971 So. 2d 951, 952 (Fla. 5th DCA 2007).

Courts locate their rational basis test analysis "in a light deferential to Legislative action." Warren, 899 So. 2d at 1096. When applying the rational basis test, courts "undertake only a limited review that is highly deferential to the legislature's choice of ends and means." Silvio Membreno & Fla. Ass'n of Vendors, Inc. v. City of Hialeah, 188 So. 3d 13, 22 (Fla. 3d DCA 2016).[5] The

---

[5] The ordinance at issue in Silvio Membreno was challenged under substantive due process grounds. The same rational basis test applies to an equal protection challenge. Silvio Membreno, 188 So. 3d at 19-20. In Silvio Membreno, Judge Logue has provided both an academic synthesis of and a practical approach to

statute's challenger must "prove that there is *no conceivable* factual predicate which would rationally support the law." Id. at 25 (internal quotations and citations omitted; emphasis in original). Courts are required to give great deference to legislative policy choices, and it constitutes reversible error for a trial court to subject legislative fact-finding to courtroom fact-finding standards. Id. at 26-27. In this vein, and recognizing the hallmark constitutional principle of separation of powers, even laws that a judge perceives "as unwise or unfair" pass constitutional muster under the rational basis test. Id. at 29.

*2. Application of the Rational Basis Test to the Subject Legislation*

To prevail, Garrido must show that "there is *no conceivable* factual predicate which would rationally support the law." Id. at 25 (internal quotations and citation omitted; emphasis in original). In other words, Garrido has the burden to establish that there is no reasonable relationship between the subject statute's treatment of chiropractors and a valid governmental objective.

The record reflects that the objective of section 10 of the 2012 PIP Act is to reduce fraud in order to lower the cost of insurance premiums.[6] To achieve this

Florida's rational basis test. We note that, when the trial court entered its order on appeal, it
did not have the benefit of Silvio Membreno's incisive rational basis practicum.

[6] We note that during the proceedings below, pursuant to rule 1.071 of the Florida Rules of Civil Procedure and section 86.091 of the Florida Statutes, Garrido gave the required notice to the Florida Attorney General of the constitutional question in this case. The Attorney General did not join the case as a party or otherwise

objective, the legislation limited the availability of the full $10,000 medical benefit to those injured persons who suffered an EMC as the result of an automobile accident.

Further to achieve this objective, the Legislature expressly: (i) defined what medical conditions constitute an "EMC" (section 627.732(16)); see footnote 2, *supra*), (ii) limited which medical professionals were authorized to diagnose an injured insured with an EMC (section 627.736(1)(a)3.), and (iii) restricted medical benefits to $2,500 for those persons who were affirmatively diagnosed as not having an EMC, with such no-EMC diagnosis being permitted by a broader range of medical professionals than those authorized to provide an affirmative EMC diagnosis (section 627.736(1)(a)4.).

These provisions all bear a reasonable relationship to the statute's objective. It is entirely reasonable that fraud will be reduced by limiting the full $10,000 PIP benefit to only those claimants who – as diagnosed by specifically identified medical providers – have suffered an EMC. Under constitutional equal protection analysis, our inquiry is not whether we believe chiropractors are qualified to provide an EMC diagnosis and, therefore, should have been included in section 627.736(1)(a)3.'s statutory schedule. Indeed, it is certainly arguable that chiropractors are as qualified to provide an EMC diagnosis as some of the other

participate in the proceedings. Ordinarily, the Court would have the benefit of the Attorney General's defense of the constitutionality of a Florida statute.

10

professionals authorized by the statute to provide such a diagnosis. But the rational basis test does not allow judicial fact-finding to replace legislative fact-finding. Silvio Membreno, 188 So. 3d at 26. We must presume that the Legislature conducted its own evaluation of the respective professionals' qualifications, especially considering that throughout section 627.736(1)(a), each specific profession is expressly referenced by the chapter of the Florida Statutes that regulates the qualifications of the profession. When no suspect class or fundamental right is implicated, our inquiry is limited to whether the law bears a reasonable relationship to a legitimate governmental objective. McCall, 134 So. 3d at 901. Plainly, the reduction of fraud in order to lower the cost of insurance premiums is a valid governmental objective. See Warren.

Within this rational basis context, we also conclude that chiropractors are not similarly situated to other medical providers entitled to make an EMC diagnosis, as set forth in section 627.736(1)(a)3., by virtue of their respective training, licensing and scope of professional practice. Strohm v. Hertz Corp./Hertz Claim Mgmt., 685 So. 2d 37, 40 (Fla. 1st DCA 1996). The Court in Strohm relied, in part, on the discussion in Clair v. Glades County Board of Commissioners, 649 So. 2d 224 (Fla. 1995), which examined the difference in the scope of practice between chiropractors and other medical providers. Strohm, 685 So. 2d at 40. Thus, section 627.736(1)(a)3. makes the durable legislative distinction between

chiropractors and other, identified medical providers that is relevant to the statute's purposes. See City of Miami v. Haigley, 143 So. 3d 1025, 1034 (Fla. 3d DCA 2014).

The requisite reasonable relationship exists between the Legislature's objectives and its exclusion of chiropractors from the list of medical providers authorized to provide an affirmative EMC diagnosis. We therefore answer the certified question in the negative.

D. The Statutory Issue – the Benefit Limit Absent an EMC or No-EMC Diagnosis

Because it is undisputed that Garrido is not a medical professional authorized to provide an EMC and, because we have concluded that section 627.736 (1)(a)3.'s requirements regarding an EMC diagnosis are not unconstitutional as applied to chiropractors, it follows that Garrido's purported EMC diagnosis of Godoy – provided by Garrido in an affidavit filed in the trial court – is insufficient to trigger the availability of $10,000 in PIP benefits. The trial court determined, however, as a matter of statutory construction, that even if Garrido could not diagnose Godoy with an EMC, Progressive nevertheless was liable for the full $10,000 in PIP benefits.

The trial court reasoned that the statutory scheme provided no specific guidance for when, as here, an injured person received neither an EMC diagnosis

12

nor a no-EMC diagnosis; therefore, the trial court reasoned that, pursuant to the general prefatory language of section 627.736(1),[7] Progressive was required to make available the full $10,000 medical benefit.

As always, we are guided by the polestar of legislative intent when called upon to construe a statute. Borden v. East-European Ins. Co., 921 So. 2d 587, 595 (Fla. 2006). In the instant case, the trial court's interpretation of the statute would render section 627.736(1)(a)3.'s requirement of an EMC diagnosis meaningless if we were to hold that the $10,000 limit was available to injured claimants without any EMC diagnosis. Section 627.736(1)(a)3. expressly requires such a diagnosis to trigger the full $10,000 availability. We construe related statutory provisions *in pari materia*, and do not construe statutes so as to render related provisions meaningless. Id. at 595. Therefore, we hold that when no EMC diagnosis has been provided by an authorized medical provider as required by section 627.736(1)(a)3., the available PIP medical benefits are limited to $2,500.

We note that other appellate courts that have faced this issue to date have reached the same conclusion. Robbins v. Garrison Prop. & Cas. Ins. Co., 809 F. 3d 583 (11th Cir. 2015); Med. Ctr. of Palm Beaches v. USAA Cas. Ins. Co., 202 So. 3d 88 (Fla. 4th DCA 2016).

---

[7] "REQUIRED BENEFITS. Every insurance policy complying with the security requirements of s. 627.733 shall provide personal injury protection to the named insured . . . to a limit of $10,000 for loss sustained by any such person as a result of bodily injury, sickness, disease . . . ." § 627.736(1), Fla. Stat. (2013).

**III. Conclusion**

For the reasons stated above, we reverse the trial court's grant of summary judgment, and conclude that section 627.736(1)(a)3. of the Florida Statutes violates neither the equal protection clause nor the due process clause; and we further conclude that absent an affirmative EMC diagnosis, the available medical benefit limit for PIP insurance is $2,500. We remand for proceedings consistent with this opinion.

Certified question answered in the negative. Reversed and remanded.