[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-13003
_____

D.C. Docket No. 8:15-cv-02543-RAL-MAP

AA SUNCOAST CHIROPRACTIC CLINIC, P.A., et al., on behalf of themselves
and others similarly situated,

Plaintiffs-Appellees,

versus

PROGRESSIVE AMERICAN INSURANCE COMPANY, et al.,

Defendants-Appellants.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 12, 2019)

Before JORDAN, GRANT, and HULL, Circuit Judges.

GRANT, Circuit Judge:

A trio of healthcare providers brought a class action against an insurance
company over a claims-handling process that they argue is illegal under Florida
law.  The district court certified an injunction class under Federal Rule of Civil
Procedure 23(b)(2), but it refused to certify a damages class under Rule 23(b)(3).

On interlocutory appeal, the question is whether the injunction class should have been certified.

We have no occasion today to disapprove—or approve—of complaints or classes that are not before us.  In this interlocutory appeal, we consider only whether the class as certified, proceeding on the complaint as alleged, is viable.  And because what this "injunction" class *really* wants is damages—and more precisely, because the injunctive remedy that this class seeks would be improper— the answer to that question is no.

I.

Under Florida law, car insurance policies must provide personal injury protection (PIP) benefits up to $10,000.  Fla. Stat. § 627.736(1).  But under a 2012 amendment to that law, not every injured motorist will be eligible to access all $10,000 in benefits.  *See* 2012 Fla. Laws Ch. 2012–197 § 10.  If a person has an "emergency medical condition" (EMC),[1] he is eligible for all $10,000 in benefits.  Fla. Stat. § 627.736(1)(a)(3).  If not, his coverage is capped at $2,500.  *Id.* § 627.736(1)(a)(4).  And we have held that in cases where no EMC determination is made one way or the other, the default is the $2,500 cap.  *Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583, 588 (11th Cir. 2015).

This case is a dispute about who is allowed to make the negative EMC determination.  The plaintiffs—two chiropractic providers and a medical provider

---

[1] Florida law defines an "Emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) Serious jeopardy to patient health.  (b) Serious impairment to bodily functions. (c) Serious dysfunction of any bodily organ or part."  Fla. Stat. § 627.732(16).

2

that treated injured motorists insured by Progressive who thereafter assigned their insurance benefits to the providers (collectively, "Suncoast")—allege that the defendants—the Progressive Corporation and two of its insurance underwriters, Progressive American Insurance Company and Progressive Select Insurance Company (collectively, "Progressive")—have denied PIP insurance benefits in an illegal manner.  Specifically, Suncoast alleges that Progressive relied on negative EMC determinations from non-treating healthcare providers to limit coverage to $2,500, and that Florida law allows only *treating* providers to make negative EMC determinations.

Suncoast sued Progressive in Florida state court and sought class-action status.  Progressive removed the case to federal court under the Class Action Fairness Act, which grants federal jurisdiction over certain class actions where the amount in controversy exceeds $5 million and there is minimal diversity.  In its second amended complaint, Suncoast asserted two counts: one for declaratory and injunctive relief and another for damages based on breach of contract.  The requested declaration would 1) declare unlawful Progressive's policy provision purporting to allow reductions in coverage based on negative EMC determinations by non-treating physicians, 2) declare unlawful Progressive's practice of relying on such determinations, and 3) find that Progressive is not permitted to disregard an affirmative EMC determination.  The requested injunction would 1) restore coverage limits to $10,000 for affected policies, 2) enjoin Progressive from including policy provisions that the declaration found unlawful, 3) notify affected policyholders and providers, and 4) award costs and attorneys' fees.  The breach-

3

of-contract claim sought damages for underpaid benefits along with interest, costs, and attorneys' fees.

Suncoast moved to certify two classes: an injunction class under Federal Rule of Civil Procedure 23(b)(2) for count one, and a damages subclass under Rule 23(b)(3) for count two.  The proposed injunction class was defined to include:

> A.  All Qualified Providers who: (i) received an assignment of benefits from a Claimant under a Progressive PIP policy, (ii) provided initial or follow up medical services to a Claimant after January 1, 2013, and (iii) were given notice by Progressive that available PIP benefits were reduced to $2,500 because of a Negative EMC Determination that Progressive obtained from a Non-treating Provider; and
>
> B.  All Claimants who were notified that Progressive reduced available PIP benefits to $2,500 because of a Negative EMC Determination Progressive obtained from a Non-treating Provider.

The damages subclass was defined to include:

> All Qualified Provider Class Members: (i) who were not paid in full for their services, (ii) who made a pre-suit demand to Progressive for payment pursuant to § 627.736(10), and (iii) where Progressive received documentation from a duly licensed physician, dentist, physician's assistant or advanced registered nurse practitioner that the Claimant had an Emergency Medical Condition.

The district court refused to certify the damages subclass—which, under Rule 23(b)(3), would require the court to find predominance and superiority—because doing so would necessitate individualized assessments and case management.  But it certified the injunction class, in part because Suncoast "assured" it that "once the

4

legal issue is determined, there will be no more supervision required to determine individual damages."

Progressive sought permission for an interlocutory appeal of the injunction class certification.  *See* Fed. R. Civ. P. 23(f) ("A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule . . . .").  A panel of this Court granted that request.  The only issue on interlocutory appeal is whether the injunction class should have been certified—Suncoast has not appealed the denial of certification of the damages subclass, and the merits are not yet at issue.

## II.

We review a class certification decision for abuse of discretion.  *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).  "But abuse of discretion is a continuum, and in the context of class actions, review for abuse of discretion often does not differ greatly from review for error."  *Id.* (internal quotation marks and citations omitted).  In conducting this analysis, we review the district court's factual determinations for clear error and its legal determinations de novo.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264–65 (11th Cir. 2009).  The party seeking class certification bears the burden to establish its propriety.  *Id.* at 1265.

## III.

## A.

Rule 23 of the Federal Rules of Civil Procedure lays down the ground rules for certifying a class action.  To win certification under Rule 23, every class must

present a named plaintiff who has standing to bring the claim. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Every class must be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citation omitted). And every class must satisfy the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Id.*

From there, the rules differ depending on what type of class the plaintiff purports to represent. For an injunction class under Rule 23(b)(2), the plaintiff must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). For a damages class under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because these rules establish different threshold certification requirements and different procedural safeguards—protective of both defendants and absent class members—it is important that courts insist on the proper treatment of different types of classes. Injunction classes can go forward under Rule 23(b)(2); damages classes must satisfy Rule 23(b)(3). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361–63 (2011).[2]

---

[2] Before *Wal-Mart*, we allowed plaintiffs to seek monetary relief through a Rule 23(b)(2) injunction class if the monetary relief was "incidental" to injunctive relief—that is, if it would

B.

The district court already concluded that a subclass of this class cannot proceed to seek damages under Rule 23(b)(3) because individualized assessments preclude certification of a damages class under that subsection.[3]  This is because, even if Suncoast is right on the merits about who may issue negative EMC determinations under Florida law, each and every member of the damages subclass would have to jump through a series of hoops to establish an individualized entitlement to damages in the district court.  Analyzing those individualized issues under the Rule 23(b)(3) standard, the district court has already held that if monetary relief is on the table, class certification is off of it.

Instead of appealing that decision and fighting this case on the Rule 23(b)(3) damages battleground—with its predominance and superiority requirements—Suncoast seeks to avoid these problems by styling its claim for relief as injunctive only.  Suncoast assures us that it is not seeking any damages award at all (at least not as a class).  Instead, it simply wants a declaration that Progressive's practice of relying on non-treating physicians is unlawful, along with an injunction.

The problem with this argument is that the injunction that Suncoast has requested is not an injunction at all, and its declaratory request is both minimal and

flow "automatically" to class members without "complex individualized determinations." *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (internal quotation marks and citation omitted).  In *Wal-Mart*, the Supreme Court appeared to lower the gate on that pathway to certification but did not fully slam it shut.  *See* 564 U.S. at 365–66.  We need not go down this road, however, because, as this opinion describes, the plaintiffs' damages claims would not be "incidental" to injunctive relief.

[3] Only the providers were included in the proposed damages subclass because the individual claimants have already assigned their claims to the providers.

7

unconnected to the members of its class. Suncoast's requested relief is not designed to address the treatment of future claims; it would instead, according to Suncoast itself, "*restore* claimants to the claims-handling process free of the improper cap on PIP benefits imposed by Progressive." In other words, the injunction would mandate that Progressive *reprocess* all claims previously capped at $2,500 based on an outside EMC determination. That is how Suncoast frames its injury—not as the loss of money, but as the loss of an opportunity to have received money in the past for a claim that was denied. In Suncoast's own words: "Class members have been injured because Progressive's unlawful practice—use of a negative EMC determination by a non-treating provider—denied them the opportunity, guaranteed by a Florida statutes [sic], to seek PIP benefits exceeding $2,500." This strategy of converting its claim for damages into a claim for injunctive relief sidesteps the Rule 23(b)(3) problems by shaving away all the issues that would require individualized determinations. But what the damages-to-injunction strategy cannot manage to do is request relief that would prevent future injury rather than redress past harms.

## C.

In the real world, there are likely people with a future interest in having Progressive manage its EMC determinations in a particular way. There may even be people who are currently forgoing treatment for a past injury because their benefits have been exhausted under Progressive's current EMC approach. But the problem for Suncoast is that those are not the claims that it has pleaded. Suncoast's attempt to excise all the damages-based problems with certification

thus runs into a fundamental issue: its creative conception of injunctive relief is not a viable theory of recovery under Rule 23(b)(2).[4]  As we have said, an injunction must be geared toward preventing *future* harm.  *See, e.g.*, *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328–29 (11th Cir. 2013).  Suncoast hammers away at the fact that it no longer seeks classwide monetary damages, but no amount of hammering can make its square peg fit into Rule 23(b)(2)'s round hole.  Everything about Suncoast's claim—from its theory of standing to its request for relief to its class definition—looks back at *past* harms.

    *First*, consider Suncoast's theory of standing in this case.  Because not every class member would ultimately be entitled to any monetary award, Suncoast frames its injury as a *lost opportunity* to have a fair shake in the claims-handling process.  But Suncoast's own descriptions make clear that this purported injury is entirely retrospective.  Suncoast argues, for example, that "Progressive's unlawful practice *denied* each Class member a fair opportunity" to prove an entitlement to benefits over $2,500.  Appellee Br. at 23 (emphasis added).  Again:  "This unlawful cessation of claims-handling *was* an injury-in-fact sufficient to confer Article III standing on each Class member."  *Id.* (emphasis added).  And again:  "Class members *have been injured* because Progressive's unlawful practice—use of a negative EMC determination by a non-treating provider—*denied* them the opportunity, guaranteed by a Florida statutes [sic], to seek PIP benefits exceeding $2,500."  *Id.* at 25 (emphases added).  In plain English, Suncoast argues that

---

[4] This analysis requires some engagement with the merits of the plaintiffs' injunctive-relief claim.  That "cannot be helped" and is frequently necessary in Rule 23 analyses.  *Wal-Mart*, 564 U.S. at 350–52.

Progressive short-circuited its review of past insurance claims when it denied them based on an outside EMC determination, and that this (past) short-circuiting is a harm of its own—regardless of whether any individual claim could have been denied for other reasons.  It now categorizes its desire to have those claims reprocessed as a future interest.

Simply put, the denial of insurance coverage in this case—whether framed as lost money, or as a lost opportunity to get money—is a retrospective harm. Suncoast counters that "Progressive continues to refuse to provide further claims-handling based on its unlawful EMC practices, so Plaintiffs plainly have a forward-looking interest in an injunction requiring Progressive to resume claims handling." *Id.* at 48 n.19.  What Suncoast is *not* saying in that statement is that it has an interest in the proper handling of future claims.  Instead, it has an ongoing interest in getting paid for past claims that have been rejected.  But a "forward-looking *interest*" in redressing a past harm—the failure to pay all benefits allegedly owed for past claims that were already denied—is not the same thing as a future *injury*. And without any threat of future injury, injunctive relief is unavailable.

*Second*, Suncoast's request for relief further betrays the retrospective nature of its injury.  Suncoast seeks a declaration stating that Progressive's practices are unlawful and asks the court to "[r]einstat[e] the full amount of PIP coverage, in the amount of $10,000, which should have been available under the affected policies." In its brief, Suncoast describes this relief as "requiring Progressive to resume handling the Class members' PIP claims in accordance with Florida law."  To begin, those two requests could be interpreted to describe different forms of relief.

10

But the only outcome that any conception of this intermediary relief could ever lead to—even in the best-case scenario for any particular claimant—would be full payment of coverage benefits that have already been denied, for claims that were already processed, for injuries that were already suffered. The requested relief, again, looks backward to an injury already suffered.

True enough, Suncoast's complaint also asked the district court to enjoin Progressive "from including provisions in their policies which purport to allow the above, illegal conduct." But that aside in its complaint cannot save this particular class for two reasons. As an initial matter, justifying a class that is all about damages with a *de minimis* request for injunctive relief is like trying to prop up a tower with a toothpick. *See Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001) ("Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.").[5] That same restriction stands in cases (like this one) where the plaintiff has ostensibly disavowed any claim for damages, but where the nature of the claim says otherwise. That is not to say that a properly

---

[5] The Second Circuit's statement in *Robinson* was an elaboration of its "predominance" test, under which it would allow a Rule 23(b)(2) class to seek monetary relief so long as injunctive or declaratory relief "predominates." 267 F.3d at 162–64. We have imposed an even stricter bar, stating that "[m]onetary relief predominates in (b)(2) class actions unless it is *incidental* to requested injunctive or declaratory relief." *Murray*, 244 F.3d at 812 (citation omitted). In *Wal-Mart*, the Supreme Court expressly rejected the "predominance" test, and questioned (but did not ultimately rule on) the "incidental" test. 564 U.S. at 363–67. We need not—indeed, cannot—reconsider the "incidental" test in light of *Wal-Mart*. *See, e.g.*, *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (noting that a Supreme Court case must "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel" to overcome prior panel precedent rule). For present purposes, the point is that Suncoast's claim would fail even under the more-generous *Robinson* test.

designed class seeking only this declaratory relief could not survive, but that is not the case that Suncoast has brought us.

*Third*, then, even if Suncoast's claim for injunctive and declaratory relief were more than a fig leaf attempting to cover its demand for past relief, it would run headlong into another problem: Suncoast's class definition itself reveals that Suncoast is seeking retrospective relief. The proposed injunction class includes:

> A. All Qualified Providers who: (i) received an assignment of benefits from a Claimant under a Progressive PIP policy, (ii) provided initial or follow up medical services to a Claimant after January 1, 2013, and (iii) were given notice by Progressive that available PIP benefits were reduced to $2,500 because of a Negative EMC Determination that Progressive obtained from a Non-treating Provider; and

> B. All Claimants who were notified that Progressive reduced available PIP benefits to $2,500 because of a Negative EMC Determination Progressive obtained from a Non-treating Provider.

Nothing in that definition envisions future harm. For a claimant, any future injury hinges on "the possibility that he may someday be in another car accident; sustain an injury entitling him to PIP benefits; and still be insured by [Progressive] under the same or a similar policy being interpreted the same way, thereby having this issue present itself again." *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1215 (11th Cir. 2019). The chance that lightning might strike twice is not enough to justify injunctive relief.

As for providers, Suncoast does allege that it and others like it "continue to treat Progressive insureds, and have a reasonable expectation that the dispute, and attendant harms, regarding Progressive's EMC Paper Review process will be

ongoing into the future."[6]  While a class may exist that would match this allegation, the class as defined here does not—it is both fatally overinclusive and underinclusive on that score.  It is overinclusive because it fails to limit membership to providers who are likely to see more Progressive insureds, and therefore likely to run into this problem again.  Indeed, Progressive asserts that two of the named plaintiffs, Suncoast itself and Tampa Bay Spine, "no longer treat PIP insureds."  Suncoast responds that "Progressive cites nothing to support this assertion."  Fair enough—but whether or not Suncoast and Tampa Bay Spine continue to treat PIP-insured patients, the point is that the class definition would sweep in them (and others like them).  *Cf. Wal-Mart*, 564 U.S. at 365 ("[E]ven though the validity of a (b)(2) class depends on whether 'final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*,' Rule 23(b)(2) (emphasis added), about half the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all.").

The class is also underinclusive because it fails to account for providers who have not yet faced denied claims on the allegedly wrongful basis but expect to do so in the future—it only applies to those providers already injured when past claims were denied.  All of this presents more evidence that the relief sought in this

---

[6] We note that *Gerber*'s standing analysis relied in part on its conclusion that the provider's injuries, as an assignee of rights from an insured, were limited to the injuries that the insured had suffered—such that any injury the provider suffered in its own right was "beside the point."  925 F.3d at 1215.  We understand that analysis as dependent on the unique context of that case, in which the provider had "specifically tailored its complaint to *avoid* alleging future injury (as it did with the money damages)."  *Id.*  But where (as here) a provider has not disclaimed its own injuries, it does not lose any independent interests it may have simply by picking up *additional* rights from an assignor.

13

case is retrospective, not prospective. *Cf. Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000) ("These plaintiffs have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages. Thus, the definition of the class shows that most of the plaintiffs are seeking only damages." (footnote omitted)). "What follows from this," as in *Wal-Mart*, "is not that some arbitrary limitation on class membership should be imposed," but rather that Suncoast's claim for retrospective relief "should not be certified under Rule 23(b)(2) at all." *Wal-Mart*, 564 U.S. at 365. Simply put, this class is not suitably crafted for prospective relief.

To be clear: when we say that *this* class is not suitably crafted for prospective relief, we make no statement about whether *other* classes may pass muster. As Suncoast alleges, for example, some providers (though perhaps not the ones here, *see supra* at 13) may reasonably expect to see injured claimants on an ongoing basis, and therefore may be able to demonstrate the sort of future harm that injunctive relief requires. Similarly, some claimants may face a real prospect of future harm if they have exhausted their benefits up to $2,500 and are forgoing additional—that is to say, *future*—treatment because their insurer has indicated it will not be covered. But for all the reasons we have discussed—Suncoast's theory of standing (predicated on a lost opportunity), its claim for relief (seeking *reprocessing* of past claims), and its class definition (both over- and underinclusive)—this is not that case.

In the end, the retrospective nature of Suncoast's class and claim make clear that an injunction is not the right remedy in this case—indeed, it is not really the

14

remedy that Suncoast's class is seeking.  And because an injunction is not the right remedy, Rule 23(b)(2) is not the right path to class certification: "the policies underlying the requirements of (b)(3) should not be subverted by recasting and bifurcating every class suit for damage as one for final declaratory relief of liability under (b)(2), followed by a class suit for damages under (b)(3)."  *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1158 n.10 (11th Cir. 1983) (internal quotation marks and citation omitted); *see also* 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1784.1 (3d ed. 2005) ("If injunctive relief does not appear suitable or serious, Rule 23(b)(2) certification will be denied.").  "In short, the plaintiffs are not really interested in final *prospective* equitable relief at all; they are singularly focused on recovering a retrospective damages remedy, and Rule 23(b)(3), not (b)(2), governs certification of a damages class."  *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 895 (7th Cir. 2011).

## D.

Suncoast's request for declaratory relief does not save the class.  For one thing, like an injunction, declaratory relief requires a likelihood of future harm. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346–47 (11th Cir. 1999); *see also Gerber*, 925 F.3d at 1211 ("Accordingly, if a plaintiff does not assert a reasonable expectation of future injury, he lacks standing to bring an action for declaratory relief." (internal quotation marks, alterations, and citation omitted)). And as both we and the Supreme Court have made clear, this future interest must be alleged by the plaintiff rather than imagined by the court:  "In order to

15

demonstrate that a case or controversy exists to meet the Article III standing requirement when a plaintiff is seeking injunctive or declaratory relief, a plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney*, 193 F.3d at 1346–47 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), and *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1205 (11th Cir. 1991)).

We will not belabor the points we have made regarding the retrospective nature of the class definition. But we will make the additional point that, in the class-action context, a request for declaratory relief must "correspond[]" with injunctive relief. Fed. R. Civ. P. 23(b)(2). "Declaratory relief 'corresponds' to injunctive relief when as a practical matter it affords injunctive relief or serves as a basis for later injunctive relief," and Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment. It follows that "an action seeking a declaration concerning [the] defendant's conduct that appears designed simply to lay the basis for a damage award rather than injunctive relief would not qualify under Rule 23(b)(2)." Wright & Miller, *supra*, § 1775; *see also Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 & n.11 (11th Cir. 2008) (concluding that unavailability of injunctive relief renders (b)(2) certification improper and noting that the "mere recitation of a request for

16

declaratory relief cannot transform damages claims into a Rule 23(b)(2) class action" (internal quotation marks and citation omitted)).[7]

Because the declaratory relief sought here does no more than that, it does not "correspond" to injunctive relief as Rule 23(b)(2) requires. To be sure, some cases allow for the possibility that a party's request for declaratory relief may eventually serve as a route to damages. But none of those cases disclaims the traditional requirements for injunctive or declaratory relief—including the requirement that the plaintiff seeks relief for a future harm. *See, e.g.*, *Fortner v. Thomas*, 983 F.2d 1024, 1031 (11th Cir. 1993) (explaining that prisoners are not barred from seeking damages after their class action seeking an injunction to address ongoing prison conditions).

\*      \*      \*

This case is about damages. Rule 23(b)(3) is the proper mechanism for certifying a damages class. But because the plaintiffs' damages claims are studded with individualized issues that put Rule 23(b)(3) certification out of the question, they have sought instead to lop off all the damages-based warts and recast their claim as one for injunctive relief under Rule 23(b)(2). That ploy may have avoided

---

[7] Some dicta from our decision in *Gerber* could be read as condoning a party's request for injunctive relief as a route to damages. *See* 925 F.3d at 1214 n.3. But no one should read *Gerber* as watering down the traditional requirements for an injunction or a declaration in the Rule 23 context. For one thing, the relevant discussion in *Gerber* dealt with Article III standing, not the criteria for class certification. And at any rate, no one is arguing that injunctive relief can never serve as a prelude to a claim for money damages—but in such a case, a party still must meet all the traditional requirements for injunctive relief. *See, e.g.*, *Fortner v. Thomas*, 983 F.2d 1024, 1031 (11th Cir. 1993). That includes the requirement that a plaintiff seeking an injunction must demonstrate a risk of future harm. And where a party is unable to meet those requirements, injunctive relief is inappropriate, regardless of whether it is sought for its own sake or because it might pave the way for a damages claim in subsequent litigation.

17

Rule 23(b)(3)'s strictures, but in the end it fails because an injunction is an inappropriate remedy for the class as certified. *Cf. Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 590 (1998) (Scalia, J., concurring in the judgment) ("The operation was a success, but the patient died.").

**REVERSED AND REMANDED.**

JORDAN, Circuit Judge, concurring in the judgment.

I agree that we should reverse the order certifying a class under Rule 23(b)(2), but would do so on a different and more narrow ground.  I therefore concur only in the judgment.

In *Robbins v. Garrison Property & Casualty Ins. Co.*, 809 F.3d 583, 587–88 (11th Cir. 2015), we interpreted Fla. Stat. § 627.736 and held that an insurer is required to pay more than $2,500 in PIP benefits only when a listed medical provider has determined that the injured person had an emergency medical condition (an "EMC").  Since then, two Florida appellate courts have come to the same conclusion. *See Progressive American Ins. Co. v. Garrido*, 211 So.3d 1086, 1093 (Fla. Dist. Ct. App. 2017); *Medical Ctr. of Palm Beaches v. USAA Cas. Ins. Co.*, 202 So.3d 88, 92 (Fla. Dist. Ct. App. 2016).  So, if there is no positive EMC determination, the PIP payments to an injured person (or a provider who has obtained an assignment of benefits from such a person) are capped at $2,500.  An insurer who pays only $2,500 in PIP benefits in the absence of a positive EMC determination—no matter its reasons for doing so—is not violating the statute and therefore not causing harm to injured persons or their medical providers.

Although the plaintiffs here seek a declaration (with injunctive relief to follow) that certain insurers are violating the statute by having non-treating health care providers issue negative EMC determinations, the Rule 23(b)(2) class certified

19

by the district court is fatally overinclusive. As the insurers persuasively argue, *see* Br. for Appellants at 25–27, the class as defined includes medical providers who have rendered services to injured persons in the absence of a positive EMC determination. Under *Robbins*, those providers have not suffered any harm due to the insurers' limitation of PIP benefits to $2,500—whether or not the insurers have improperly obtained negative EMC determinations—and do not have a basis for seeking declaratory or injunctive relief. That means that the class as certified cannot stand.

The Supreme Court has not definitively told us whether the inclusion of class members who have not suffered the same harm as the named class representatives (or any harm at all) is an Article III problem or a Rule 23 problem. *See Tyson Foods v. Bouaphekeo*, 136 S. Ct. 1036, 1050 (2016) (recognizing that the issue is of "great importance" but declining to address it because the petitioner abandoned it); *Gratz v. Bollinger*, 539 U.S. 244, 263–64 & n.15 (2003) (identifying but not deciding the issue while noting "tension" in prior Supreme Court cases). But regardless of the appropriate analytical lens, it is a problem. To avoid a constitutional Article III ruling, I would approach the issue under Rule 23 and hold that the class as defined should be decertified. *See, e.g.*, William B. Rubenstein et al., 1 Newberg on Class Actions § 2.3 (5th ed. 2019 Supp.) ("Most courts concerned about the standing of absent class members are in fact concerned about whether the class is properly

defined, as the issue tends to arise in the context of class certification, not jurisdiction. In this sense, the problem of un-injured absent class members is a problem of Rule 23, not of Article III."); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) ("A class must be defined in such a way that anyone within it would have standing.").