[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14958

_____

D.C. Docket No. 0:19-cv-61366-MGC

LEROY MACK,

Plaintiff-Appellant,

versus

USAA CASUALTY INSURANCE COMPANY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 22, 2021)

Before WILSON, LAGOA, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

Leroy Mack totaled his car and was not satisfied with the method his insurer,

USAA Casualty Insurance Company, used to calculate what it paid him. So he sued

USAA on behalf of himself and a putative class for declaratory judgments that

USAA's method was inconsistent with Florida law and the insurance policy. As supplemental relief to those declaratory judgment claims, Mack also asked for USAA to recalculate the class members' claims using a legal method and make them new offers. Mack concedes, however, that a "correct" calculation method will not necessarily result in higher offers.

Our caselaw is clear that Mack does not have standing to seek prospective relief on the off chance that he might total a car again in the future. The question for us, then, is whether Mack has Article III standing because he requests that USAA make new settlement offers as supplemental relief if his declaratory judgment claim succeeds. After careful review and with the benefit of oral argument, we hold that a plaintiff's request for supplemental relief does not change the standing analysis for a declaratory judgment claim. Accordingly, we conclude that Mack does not have standing to bring his declaratory judgment claims, vacate the district court's order of dismissal, and remand to the district court with instructions that the district court remand the case back to the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida.

## I.    BACKGROUND

While insured under a Florida motor vehicle insurance policy issued by USAA Casualty Insurance Company, Leroy Mack was involved in a car accident that rendered his vehicle a total loss. Under the policy, USAA will pay up to the

2

"actual cash value" of the covered vehicle in the event of a total loss. To determine that value, USAA uses a third-party service, the CCC ONE valuation system, which purports to automatically calculate actual cash value based on comparable vehicle data from its own computer system and data on the insured's vehicle input by USAA adjusters. In the event of a disagreement over the amount of loss—which includes actual cash value—the policy allows for either party to demand appraisal.

Mack submitted a claim under the policy, and USAA agreed to coverage. USAA offered to pay Mack the actual cash value of his vehicle as determined by the CCC ONE system, and Mack accepted payment. But about two months after cashing that check, Mack sent USAA a demand letter. He argued that USAA had violated Florida law and breached its policy by failing to pay him license and title transfer fees or a document fee. USAA responded that it was only responsible for "actual cash value and tax."

Mack then filed a class-action complaint in Florida state court on behalf of himself and a putative class of similarly situated policyholders against USAA seeking (1) a declaratory judgment that USAA's use of the CCC ONE system violates Florida law and supplemental relief in the form of an order requiring USAA to recalculate the class members' total loss claims under a compliant method and to make new offers based on those recalculations; (2) a declaratory judgment that USAA's refusal to pay separate title, license, and dealer fees in connection with total

3

loss claims breaches its coverage policy and supplemental relief in the form of an order requiring USAA to pay the title and license fees and offer dealer fees to the class members; and (3) damages for breach of contract based on USAA's failure to pay Mack and the purported class members $83.25 in title and license fees. Importantly, and in contrast to his claim for title and license fees, Mack did not seek damages for USAA's failure to pay dealer fees or an order requiring their payment. USAA contended that dealer fees are included in the advertised vehicle prices used by the CCC system and, therefore, they were necessarily included in the actual cash value payments made to each class member.

USAA interpreted the complaint as contesting its valuation of Mack's vehicle and invoked its right under the policy to demand appraisal. USAA then filed a notice of removal to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 and the Class Action Fairness Act, 28 U.S.C. §§ 1332(d) and 1453. After removal, USAA moved to dismiss the complaint on the basis that it amounted to a dispute over the amount of loss and that the policy required Mack to fully comply with the appraisal and other provisions before filing suit. Mack responded that his claims raised purely legal questions and did not constitute a dispute over the amount of loss, therefore, they were not amenable to appraisal. The district court determined that "[t]his is a case about payment of money," not "about legal coverage or whether or not a contract provides for anything." Accordingly, the court dismissed the case without prejudice

4

"pending appraisal." Mack timely appealed.

After Mack filed his initial brief with this Court, the parties reached a settlement as to the title and license fees claims, thereby mooting the only damages claim. The only remaining count is for declaratory judgment and supplemental relief, in which Mack seeks two declaratory judgments: (1) that USAA's use of the CCC System violates Florida law and the policy and (2) that Florida law and the policy require that USAA pay dealer fees as part of any total loss settlement. Supplemental to those declarations, Mack seeks (1) a recalculation of all class members' total loss claims under a new method and new offers based on those amounts if they are higher than the amount originally offered and (2) an order requiring USAA to offer dealer fees to the class members. As to his request for supplemental relief related to his CCC claim, Mack insists before this Court that a recalculation of his and other class members' claims under a new method will not necessarily result in a higher offer by USAA. Instead, he states that "recalculation using a legal method might or might not result in a higher value than the CCC system value" and that he "does not claim his vehicle's value was greater than USAA's calculation."

This Court directed the parties to file supplemental briefs addressing whether Mack has Article III standing to pursue those remaining claims in federal court.

## II.    STANDARD OF REVIEW

Article III standing "is a threshold jurisdictional question that we review de

novo." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 923 (11th Cir. 2020) (en banc). Likewise, we review the district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

## III.    DISCUSSION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III of the Constitution limits the jurisdiction of federal courts to adjudicating actual "Cases" and "Controversies." To determine whether a dispute satisfies Article III's case-or-controversy requirement, courts have established three justiciability doctrines, "[p]erhaps the most important" of which is the standing doctrine. *See Wooden v. Bd. of Regents of the Univ. Sys. of Ga.*, 247 F.3d 1262, 1273 (11th Cir. 2011). At an "irreducible constitutional minimum," the standing doctrine requires that a plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

USAA, not Mack, invoked federal jurisdiction by removing the case. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Specifically, that party "must demonstrate standing for each

6

claim [the plaintiff] seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up). That a plaintiff has standing to bring one claim does not save another claim for which he does not; "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *see also Davis*, 554 U.S. at 733–34.

The allegations necessary to establish standing depend on the type of relief sought. To establish standing when seeking retrospective relief, a plaintiff must show that he has suffered "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. But if a plaintiff seeks *prospective* relief, such as a declaratory judgment, he must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). And that future injury must be "real," "immediate," and "definite." *Id.* at 1347.

As an initial matter, we can easily dispense with the possibility that Mack has standing for prospective relief. The complaint alleges that Mack and other class members "are in doubt concerning their rights under" the policy and, because they are still insured by USAA, they "could reasonably anticipate suffering another total loss in the future." But we held in *A&M Gerber Chiropractic LLC v. GEICO*

*General Insurance Company*, that "the possibility that [a plaintiff] may someday be in another car accident . . . and still be insured by [the insurance company] under the same or a similar policy being interpreted the same way, thereby having this issue present itself again . . . is too contingent to constitute a 'substantial likelihood' of future injury." 925 F.3d 1205, 1215 (11th Cir. 2019). Applying *A&M Gerber*, the complaint's allegations are insufficient to establish the substantial likelihood of future harm necessary to establish standing for a declaratory judgment claim.

The next question is whether Mack has sought, and has standing to seek, retrospective relief—*i.e.*, more money for his totaled car. USAA argues that, although Mack labeled his claims as being for a declaratory judgment, Mack really wants a "monetary recovery in the form of new insurance coverage payments." This is so, USAA argues, because Mack seeks "further or supplemental relief in the form of an order that USAA must recalculate their total loss claims" and "an order requiring USAA to offer dealer fees to Mack and the Class."

We will not construe Mack's declaratory judgment claims as claims for retrospective relief for the purpose of assessing his standing. At this juncture, our job is to determine whether Mack has standing to pursue the claims that he has chosen to present in the complaint. And Mack chose to frame his claims as seeking prospective relief through requests for declaratory judgments; he specifically chose not to pursue damages for the retrospective harm that he has also arguably alleged.

8

It is no secret that, in doing so, Mack sought to avoid federal jurisdiction. But he has a right to do so. *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). We do not know whether this kind of unusual claim is cognizable under Florida law, but we will not rewrite Mack's complaint to satisfy Article III's requirements. Instead, we must accept his allegations and determine if they establish Article III standing for his declaratory judgment claims.

A plaintiff may follow any successful claim for a declaratory judgment with a request for supplemental relief. Both the federal and Florida declaratory judgment acts expressly allow a plaintiff to request further relief based on a declaratory judgment. *See* 28 U.S.C. § 2202; Fla. Stat. § 86.061. And, although we have not addressed the issue, other courts have interpreted both statutes as allowing money damages as a form of supplemental relief. *See, e.g.*, *Noatex Corp. v. King Constr. of Hous., LLC*, 732 F.3d 479, 487 (5th Cir. 2013) ("Monetary damages are allowed under [Section 2202] and we review a district court's decision to grant or deny such monetary damages for abuse of discretion."); *McAllister v. Breakers Seville Ass'n, Inc.*, 41 So. 3d 405, 408 (Fla. Ct. App. 2010) (stating that, under Florida's Declaratory Judgments Act, supplemental relief "includes all relief necessary, including money judgments"). In fact, some courts have recognized that "a declaratory judgment is normally a prelude to a request for other relief, whether injunctive or monetary" because "[n]o one wants an empty declaration." *Berger v.*

9

*Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763–64 (7th Cir. 2003) (emphasis omitted).

We conclude that the possibility of supplemental relief does not convert Mack's declaratory judgment claims into an effort to remedy past injuries. A court may decide whether Mack is eligible for supplemental monetary relief only *after* issuing a declaratory judgment in his favor. *See McAllister*, 41 So. 3d at 408 ("Once a declaratory judgment is rendered in a party's favor, the court then considers any motions for supplemental relief." (emphasis omitted)). And we have been clear that "[i]njury in the past . . . does not support a finding of an Article III case or controversy when the only relief sought is a declaratory judgment." *Malowney*, 193 F.3d at 1348. Instead, for a federal court "to have jurisdiction to issue a declaratory judgment," a plaintiff "must assert a reasonable expectation that the injury they have suffered . . . will be repeated in the future." *Id.* at 1347. Because there is no substantial likelihood that Mack will total his car again while insured by USAA, he lacks standing to sue for a declaratory judgment about the method it uses to assess payments under the policy.

To argue for a contrary result, USAA relies on this Court's analysis in *AA Suncoast Chiropractic Clinic, P.A. v. Progressive American Insurance Company*, 938 F.3d 1170 (11th Cir. 2019). The question in *AA Suncoast* was whether the district court had erred in certifying an injunction class under Federal Rule of Civil

10

Procedure 23(b)(2). *See AA Suncoast*, 938 F.3d at 1172. A class action may be maintained under Rule 23(b)(2) if "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* at 1174. The plaintiffs in *AA Suncoast* sought a declaration that the insurer's practice of relying on non-treating physicians' medical determinations was unlawful. *Id.* at 1173. They also sought an injunction that would restore coverage limits for policies affected by the unlawful reliance on non-treating physician determinations and notify any affected policyholders or providers. *Id.* We determined that the requested relief was "not an injunction at all" because, rather than "address the treatment of future claims," it would "*restore* claimants to the claims-handling process free of the improper cap" on benefits. *Id.* at 1175. Because the requested injunction would only "redress past harms" and not "prevent future injury," class certification was improper under Rule 23(b)(2). *Id.*

Our holding in *AA Suncoast* does not help USAA here. Here, unlike in *AA Suncoast*, our inquiry is unrelated to whether Mack is entitled to the declaratory relief he seeks. In *AA Suncoast*, we looked to the harm alleged in the complaint to determine whether injunctive or corresponding declaratory relief was appropriate because we were deciding whether class certification was proper under Rule 23(b)(2). The issue before us now is whether Mack has alleged the type of harm necessary to establish his standing to bring declaratory judgment claims. If Mack

11

lacks standing to pursue his declaratory judgment claims, then we are powerless to resolve whether declaratory relief is appropriate to remedy the alleged harm.

USAA also argues that this case is more akin to *Mills v. Foremost Insurance Co.*, 511 F.3d 1300 (11th Cir. 2008), in which we held that the plaintiffs did have Article III standing, than *A&M Gerber*, in which we held that the plaintiffs did not. In *Mills*, however, we addressed only whether the plaintiffs had standing to sue for *damages*. *Id.* at 1306–07. We did not address the plaintiffs' standing to seek declaratory or injunctive relief. Because Mack seeks declaratory relief, our reasoning in *Mills* does not apply.

## CONCLUSION

In deciding what to do with Mack's remaining claims, we are mindful that, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). The standing doctrine "stems directly from Article III's 'case or controversy' requirement," therefore, it "implicates our subject matter jurisdiction." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003). Accordingly, if the district court had determined that Mack lacked standing to bring his declaratory judgment claims, it would have been required to remand those claims back to state court. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter

12

jurisdiction, the case shall be remanded."); *A&M Gerber*, 925 F.3d at 1216 ("Because the District Court had no jurisdiction to entertain this suit, we VACATE its judgment. The District Court is instructed to enter an order remanding the case to [state court]."); *see, e.g.*, *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000) (instructing the district court to remand a claim over which it lacked subject matter jurisdiction to state court but holding that summary judgment was appropriate for another claim which was properly before the district court). Because "all doubts about jurisdiction should be resolved in favor of remand to state court," *Am. Tobacco Co.*, 168 F.3d at 411, we therefore **VACATE** the district court's order of dismissal and **REMAND** to the district court with instructions for the district court to remand the unsettled claims to the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida.