[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13537

_____

D.C. Docket No. 2:18-cv-00514-ACA

THOMAS E. REYNOLDS,

                                        Plaintiff - Appellant,

versus

BEHRMAN CAPITAL IV L.P.,
AXA PRIMARY FUND AMERICA IV LP,
AXA PRIVATE CAPITAL I, LP,
CORE AMERICAS/GLOBAL HOLDINGS, LP,
GLOBAL FUND PARTNERS II, LP, et al.,

                                        Defendants - Appellees,

BEHRMAN BROTHERS MANAGEMENT CORPORATION, et al.,

                                        Defendants.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 23, 2021)

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

JORDAN, Circuit Judge:

Thomas Reynolds, the Chapter 7 trustee for the bankruptcy estates of Atherotech Inc. and Atherotech Holdings, appeals the dismissal of his complaint for lack of personal jurisdiction. The district court, following removal of the case from Alabama state court, applied the doctrine of derivative jurisdiction articulated in *Lambert Run Coal Co. v. Baltimore & O.R. Co.*, 258 U.S. 377, 382 (1922), and ruled that because the state court did not have personal jurisdiction over the defendants under Alabama's long-arm statute, it too lacked personal jurisdiction. In so ruling, the district court concluded that Mr. Reynolds could not rely on Bankruptcy Rule 7004(d) (which looks to a defendant's national contacts and permits nationwide service of process) to establish personal jurisdiction. And it denied as futile Mr. Reynolds' motion to transfer the case to the Southern District of New York under 28 U.S.C. § 1406, explaining that under the doctrine of derivative jurisdiction a New York district court would likewise lack personal jurisdiction over the defendants.

The Supreme Court has applied the doctrine of derivative jurisdiction only with respect to subject-matter jurisdiction, so that if a state court lacks subject-matter jurisdiction over a case when it is initially filed, a federal court also lacks subject-matter jurisdiction when the case is removed (even if the federal court would have had jurisdiction had the case originally been filed in a federal forum). The main

2

question for us in this appeal is whether the doctrine applies when the state court from which the case is removed lacks personal jurisdiction over the defendants.

## I

We accept as true, at this stage of the litigation, the facts as alleged in the complaint filed by Mr. Reynolds in Alabama state court (and later amended in federal court). *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 130 (11th Cir. 2013). Given the posture of the appeal, we express no view on the validity of the allegations or the merits of the claims.

## A

Atherotech operated a laboratory that conducted testing on blood cholesterol levels. Atherotech was wholly owned by Atherotech Holdings, which was in turn owned by three shareholders: Behrman Capital IV LP, Behrman Brothers LLC, and Midcap Financial Investment, LP. Behrman Capital was the majority shareholder of Atherotech Holdings, owning 94% of its stock and controlling three of five seats on its board of directors. Behrman Brothers—which was also Behrman Capital's general partner—and MidCap owned the remaining shares in Atherotech Holdings.

As part of its business, Atherotech paid physicians who ordered blood cholesterol levels a processing and handling fee, known as a P&H fee. Although Medicare rules and regulations prohibit the payment of P&H fees, Atherotech

3

nevertheless submitted claims for those fees to Medicare and other federal healthcare programs.

In 2012, the Department of Justice began to investigate Atherotech's payments of P&H fees as a potential violation of the False Claims Act, 31 U.S.C. §§ 3729–3730, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. Violations of the False Claims Act can result in a per-claim penalty of between $5,500 and $11,000, in addition to treble damages. *See* 31 U.S.C. § 3729(a).

Despite knowing of the investigation, Atherotech continued to make P&H fee payments and submit Medicare claims for those payments. From January of 2011 through June of 2013, Medicare reimbursed Atherotech about $35,691,000 for tests associated with P&H fee payments. The complaint alleges that, by June of 2013, Atherotech had up to $107,073,000 in contingent liabilities for violations of the False Claims Act.

In 2013, as the DOJ investigation was ongoing, Atherotech borrowed $40.5 million under a credit agreement. Atherotech then executed a dividend recapitalization under which it paid Atherotech Holdings' shareholders—Behrman Capital, Behrman Brothers, and MidCap—dividends totaling $31,872,860.75. Behrman Capital received $31,433,596.05; Behrman Brothers received $87,374.00; and MidCap received $351,890.70. Behrman Capital distributed its portion of the dividend to its limited partners and its general partner, Behrman Brothers. Behrman

Brothers in turn distributed its share of the dividends to its members, along with the portion it received from Behrman Capital as its general partner.

By July of 2014, Atherotech could no longer pay P&H fees, and its revenues decreased significantly. From July through October of 2015, Behrman Capital invested $6.9 million in Atherotech to keep the business afloat. Despite the influx of funds, Atherotech and Atherotech Holdings filed for bankruptcy in March of 2016. The bankruptcy court appointed Mr. Reynolds as the Chapter 7 trustee for both companies, and he eventually sold Atherotech's assets for $19.6 million.

**B**

In March of 2018, Mr. Reynolds, as trustee for the bankruptcy estates of Atherotech and Atherotech Holdings, filed a complaint in Alabama state court. The initial complaint named 30 defendants: Behrman Capital; Behrman Capital's 15 limited partners; Behrman Brothers; Behrman Brothers' 12 members; and MidCap. Mr. Reynolds asserted several federal and state law claims stemming from the dividend issued by Atherotech Holdings to its shareholders.

The defendants removed the case to the district court under 28 U.S.C. § 1441, asserting that the complaint implicated significant federal issues, and alternatively under 28 U.S.C. § 1452(a), asserting that pursuant to 28 U.S.C. § 1334 the district court had subject-matter jurisdiction under the Bankruptcy Code. The district court concluded that the case did not implicate a significant federal issue under § 1441,

but held that Mr. Reynolds' claims "arose under" the Bankruptcy Code or were "related to" the bankruptcy proceedings of Atherotech and Atherotech Holdings. As a result, it ruled that removal was proper under § 1452(a).

The defendants moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The district court granted their motions. It concluded that Bankruptcy Rule 7004(d), which allows for nationwide service of process, *see, e.g.*, *Double Eagle Energy Services, L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 264 (5th Cir. 2019), did not apply because its jurisdiction was derivative of the Alabama state court. Turning to Alabama's long-arm statute, the district court ruled that the defendants did not have minimum contacts with Alabama that would permit it to exercise personal jurisdiction over them. The district court, however, allowed Mr. Reynolds to file a motion to amend his complaint and explain why doing so would not be futile.

In his motion to amend, Mr. Reynolds asserted that the proposed amended complaint would "remedy the deficiencies cited" by the district court, and would drop MidCap and the limited partners and members as defendants. *See* D.E. 109 at 2–3. He further stated that "[t]he only two defendants named in the [a]mended [c]omplaint" were Behrman Capital and Behrman Brothers. *See id*. Consistent with this representation, Mr. Reynolds' amended complaint listed Behrman Capital and Behrman Brothers as the sole defendants.

6

Behrman Capital and Behrman Brothers moved to dismiss the amended complaint for lack of personal jurisdiction under Rule 12(b)(2). Mr. Reynolds asserted that there was personal jurisdiction under the Alabama long-arm statute, and alternatively requested that the district court transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1406 if it concluded that it lacked personal jurisdiction over the defendants. The district court ruled that, under Alabama's long-arm statute, it could not exercise personal jurisdiction over Behrman Capital and Behrman Brothers. It also concluded that transfer would be futile "because the derivative removal jurisdiction bars any federal court from acquiring personal jurisdiction over this suit after its removal from a state court that lacked such personal jurisdiction." The district court therefore dismissed Mr. Reynolds' amended complaint without prejudice.

On September 9, 2019, Mr. Reynolds filed a notice of appeal in which he included all the original defendants, including MidCap. In his notice of appeal, Mr. Reynolds sought to appeal the district court's dismissal of both his original and amended complaints.

## II

As noted, Mr. Reynolds dropped MidCap as a defendant in his amended complaint. MidCap now argues that this constituted a waiver by Mr. Reynolds of

7

any argument that the district court erred by initially dismissing it for lack of personal jurisdiction. We are not persuaded.

An amended complaint supersedes and replaces the original complaint. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006); *Fritz v. Standard Sec. Life Ins. Co. of N.Y.*, 676 F.2d 1356, 1358 (11th Cir. 1982). We have held, however, that a plaintiff does not waive his right to appeal the dismissal of a claim in the original complaint by amending the complaint and omitting the dismissed claim. "[W]e do not require a party to replead a claim following a dismissal under Rule 12(b)(6) to preserve objections to the dismissal on appeal" where repleading "would have been futile and would have resulted in a second dismissal[.]" *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 n.5 (11th Cir. 2001). *See also Varnes v. Local 191, Glass Bottle Blowers Ass'n of the United States and Canada*, 674 F.2d 1365, 1370 (11th Cir. 1982) ("Varnes was not barred, by consenting to the dismissal and filing the amended complaint, from raising on appeal the correctness of the dismissal order.").[1]

---

[1] We had come to a similar conclusion in *Wilson v. First Hous. Inv. Corp.*, 566 F.2d 1235, 1238 (5th Cir. 1978), but that decision was vacated by the Supreme Court, *see* 444 U.S. 959 (1979), and as a result it does not have any precedential force. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (en banc).

As the Tenth Circuit has explained, "a rule requiring plaintiffs who file amended complaints to replead claims previously dismissed . . . in order to preserve those claims merely sets a trap for unsuspecting plaintiffs with no concomitant benefit to the opposing party." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1518 (10th Cir. 1991). We agree. "Without more, the action of the amending party should not result in completely denying the right to appeal the court's ruling." 6 Arthur R. Miller, Mary Kay Kane, & Benjamin Spencer, Federal Practice & Procedure § 1476 (3d ed. 2020 update).

Applying *Dunn*, we conclude that Mr. Reynolds did not waive his right to appeal the district court's dismissal of MidCap for lack of personal jurisdiction by failing to name MidCap in the amended complaint because amendment would have been futile. In dismissing MidCap, the district court rejected Mr. Reynolds' arguments that MidCap had the requisite minimum contacts under Alabama's long-arm statute, and, alternatively, that Bankruptcy Rule 7004(d) could be used to obtain personal jurisdiction over the defendants. Apparently, Mr. Reynolds had no additional facts that could establish minimum contacts for MidCap under Alabama's long-arm statute, and requesting for a second time that the district court apply Bankruptcy Rule 7004(d) therefore would have been futile. Under these circumstances, Mr. Reynolds did not waive his right to appeal the district court's

9

dismissal of MidCap from the original complaint for lack of personal jurisdiction. *See Dunn*, 674 F.2d at 1191 n.5.[2]

## III

"We review *de novo* the district court's dismissal for lack of personal jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

## A

The parties dispute whether the doctrine of derivative jurisdiction prevents the post-removal use of Bankruptcy Rule 7004(d) to establish personal jurisdiction over the defendants. Mr. Reynolds contends that the doctrine applies only to subject-matter jurisdiction, and not personal jurisdiction. Behrman Capital and Behrman Brothers argue that the doctrine applies to both types of jurisdiction, and urge affirmance. We provide some background on the doctrine of derivative jurisdiction, and then turn to the parties' arguments.

"[W]hen a federal court has jurisdiction, it also has a 'virtually unflagging obligation . . . to exercise' that authority." *Mate v. Lynch*, 576 U./s. 143, 150 (2015) (citation omitted). But almost a century ago, in *Lambert Run Coal Co.,* the Supreme

---

[2] Given our precedent in *Dunn*, we need not address MidCap's reliance on *United States ex rel. Atkinson v. PA. Shipbuilding Co.*, 473 F.3d 506, 516 (3d Cir. 2007) (explaining that "[i]f a party omits a claim from an amended complaint that it would not have been futile to replead, that party can still preserve the claim for appellate review by standing on the dismissed claim despite leaving it out of the amended complaint").

Court explained that "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction.  If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."  258 U.S. at 382.  The complaint in that case, which was filed in state court and then removed to federal court, sought to challenge and set aside an order of the Interstate Commerce Commission. Because federal courts had exclusive jurisdiction over such claims, and because the United States had not consented to be sued in state courts, the Supreme Court held that the state court did not have subject-matter jurisdiction to entertain the complaint. And so, when the case was removed to federal court, that court also lacked subject-matter jurisdiction.  *See id.* ("As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal.").

The Supreme Court has kept the doctrine of derivative jurisdiction alive over the years by sporadically applying it or discussing it.  *See, e.g.*, *Gen. Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 288 (1922) ("When a cause is removed from a state court into a federal court, the latter takes it as it stood in the former. A want of jurisdiction in the state court is not cured by the removal, but may be asserted after it is consummated."); *Minnesota v. United States*, 305 U.S. 382, 389 (1939) (applying the doctrine of derivative jurisdiction to dismiss an action because the state

11

court lacked subject-matter jurisdiction); *Freeman v. Bee Machine Co. Inc.*, 319 U.S. 448, 449–51 (1943) (discussing the doctrine of derivative jurisdiction and refusing to extend it to bar the post-removal amendment of the complaint); *Arizona v. Manypenny*, 451 U.S. 232, 242 n.17 (1981) (describing the doctrine of derivative jurisdiction as well-settled).  The doctrine, according to the Supreme Court, applies "even where the federal court would have had jurisdiction if the suit were brought there."  *Freeman*, 319 U.S. at 449.  *See, e.g.*, *Fed. Nat. Mortg. Ass'n v. LeCrone*, 868 F.2d 190, 192 (6th Cir. 1989); *Reid v. United States*, 715 F.2d 1148, 1153–54 (7th Cir. 1983).

Over the years, the doctrine has been criticized by some courts and commentators.  *See, e.g.*, *Washington v. Am. League of Pro. Baseball Clubs*, 460 F.2d 654, 658 (9th Cir. 1972) (describing the doctrine as a "kind of legal *tour de force* that most laymen cannot understand, particularly in a case where the federal court not only has subject matter jurisdiction, but has exclusive subject matter jurisdiction"); 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper et al., Federal Practice & Procedure § 3722 (Rev. 4th ed. 2020) (collecting cases criticizing the doctrine of derivative jurisdiction and characterizing the criticism as "deserved").  In 1985, Congress partially abrogated the doctrine of derivative jurisdiction by adding a new subsection (e) to 28 U.S.C. § 1441.  The amended § 1441(e) provided that a federal court on removal was "not precluded from hearing

12

and determining any claim" simply "because the State court from which such civil action is removed did not have jurisdiction over that claim." 28 U.S.C. § 1441(e) (1986). In 2001, we said that the amended § 1441(e) "abrogated the theory of derivative jurisdiction." *Hollis v. Florida State University*, 259 F.3d 1295, 1298 (11th Cir. 2001).

The 1985 amendment to § 1441 resulted in some disagreement as to whether Congress had abrogated the doctrine of derivative jurisdiction for all removal statutes or just for § 1441. *See generally Palmer v. City Nat. Bank*, 498 F.3d 236, 245 (4th Cir. 2007) (explaining the different views of the Fourth and Eighth Circuits). The disagreement proved to be relatively short-lived, for in 2002 Congress again amended § 1441, "creating a new § 1441(e) and redesignating the prior § 1441(e) as § 1441(f) and slightly changing its language." *Id*. The new (and current) § 1441(f) now reads as follows (emphasis ours): "Derivative removal jurisdiction.-- The court to which a civil action is removed *under this section* is not precluded from hearing and determining any claim in such civil action because the [s]tate court from which such civil action is removed did not have jurisdiction over that claim."[3]

Following the 2002 amendments to § 1441, several of our sister circuits have held that the "under this section" language in the new § 1441(f) abrogates the

---

[3] Congress has also abrogated the doctrine of derivative jurisdiction in "patent, plant variety protection, and copyright cases." *See* 28 U.S.C. § 1454(c). But this is not one of those types of cases.

doctrine of derivative jurisdiction only in cases removed to federal court pursuant to § 1441. These circuits have therefore continued to apply the doctrine in cases removed under other federal statutes, such as 28 U.S.C. § 1442. *See Palmer*, 498 F.3d at 244–46; *Rodas v. Seidlin*, 656 F.3d 610, 615–25 (7th Cir. 2011); *Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012); *Lopez v. Sentrillon Corp.*, 749 F.3d 348, 350–51 (5th Cir. 2014); *Conklin v. Kane*, 634 F. App'x 69, 73 (3d Cir. 2015). *Accord* 14C Federal Practice & Procedure § 3726. *But cf. North Dakota v. Fredericks*, 940 F.2d 333, 337 (8th Cir. 1991) (holding, before the 2002 amendments, that the "policy of Congress underlying new § 1441(e) supports the complete abandonment of the derivative-jurisdiction theory"). These decisions, however, are of limited value here because they all involved scenarios where the state court lacked subject-matter (not personal) jurisdiction.

## B

The question for us is whether the doctrine of derivative jurisdiction applies to removed cases in which the state court lacked personal jurisdiction over the defendants. Our answer, at least in this case, is that it does not.

We begin by acknowledging the obvious—though the Supreme Court has applied the doctrine of derivative jurisdiction only in cases where the state court lacked subject-matter jurisdiction, it has described the doctrine as encompassing both subject-matter and personal jurisdiction. *See, e.g.*, *Manypenny*, 451 U.S. at 242

14

n.17 ("[I]f the state court lacks jurisdiction over the subject matter or the parties the federal court acquires none upon removal."); *Freeman*, 319 U.S. at 449 ("[W]here a state court lacks jurisdiction of the subject matter or of the parties, the federal District Court acquires none on removal of the case."); *Lambert Run Coal Co.*, 258 U.S. at 382 (" If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."). These characterizations are dicta, but Supreme Court dicta "is not something to be lightly cast aside." *F.E.B. Corp. v. United States*, 818 F.3d 681, 690 n.10 (11th Cir. 2016) (noting that "there is dicta . . . and then there is Supreme Court dicta").

Moreover, over the years a number of circuits have applied the doctrine of derivative jurisdiction to require dismissal in cases where the state court, prior to removal, lacked personal jurisdiction over the defendants (usually due to ineffective service of process). *See Aanestad v. Beech Aircraft Corp.*, 521 F.2d 1298, 1300 (9th Cir. 1974); *Meyer v. Indian Hill Farm, Inc.*, 258 F.2d 287, 290 (2d Cir. 1958); *Garden Homes, Inc. v. Mason*, 238 F.2d 651, 653 (1st Cir. 1956); *Block v. Block*, 196 F.2d 930, 933 (7th Cir. 1952).  We can therefore understand why the district court here applied the doctrine of derivative jurisdiction.

Giving the Supreme Court's dicta the respect and consideration it is due, and acknowledging the cases cited above, we choose to go in a different direction.  We

15

hold, for several reasons, that the doctrine of derivative jurisdiction does not apply in cases where the state court lacks personal jurisdiction over the defendants.

First, having acknowledged the importance of the Supreme Court's dicta, we note that there are specific reasons in each of the derivative jurisdiction cases cited above for the Court to have included the "of the parties" language in its dicta (i.e., language that appears to encompass personal jurisdiction). In *Lambert Run Coal Co.*, for example, the question at issue involved federal sovereignty. Thus, the issue of jurisdiction in that case largely hinged on *who* the party was. The same is true in *Manypenny*, which was a criminal case between a state and a federal officer. And in *Manypenny*, the "of the parties" language was not relevant to the outcome of the case and appears only in a footnote.

Second, in *Freeman*, the Supreme Court acknowledged that *Lambert Run Coal Co.* had rejected the idea that jurisdictional defects were *cured* or *waived* by removal, but nonetheless held that district courts have the power to cure or fix whatever jurisdictional defects existed. 319 U.S. at 452. The Court explained that the *Lambert Run Coal Co.* line of cases stands for the proposition that removal, in and of itself, does not cure any state court jurisdictional defects: "The *Lambert Co.* case and those which preceded and followed it merely held that defects in the jurisdiction of the state court either as respects the subject matter or the parties were not cured by removal but could thereafter be challenged in the federal court." *Id*. at

16

451. The Court held that, although removal "does not cure jurisdictional defects present in the state court action," federal courts have "the full arsenal of authority with which they have been endowed." *Id*. at 452. Accordingly, the Court held that a plaintiff could add a claim after removal—even though that claim could not have been added in state court—because the federal rules allow such an amendment.

Under *Freeman*, defendants who remove their action to federal court do not waive their challenge to personal jurisdiction. But *Freeman* also means that the district court to which the case is removed has the "full arsenal of authority with which [it has] been endowed" to establish personal jurisdiction over the defendants. *Id*. Part of that "arsenal of authority," as relevant here, is Bankruptcy Rule 7004(d), which looks to a defendant's national contacts and permits nationwide service of process to establish personal jurisdiction.

Third, the Supreme court has consistently held that once a case has been removed from state court to federal court, federal law "govern[s] the mode of procedure[.]" *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 438 (1974). *See also Willy v. Coastal Corp.*, 503 U.S. 131, 134–35 (1992) (explaining that the Federal Rules of Civil Procedure, pursuant to the language in Rule 81(c), "govern procedure after removal"); *Freeman*, 319 U.S. at 452 ("The jurisdiction exercised on removal is original not appellate. . . . The forms and modes of proceeding are governed by federal law.") (citations

omitted).    It is therefore difficult to understand why a federal statute or rule governing personal jurisdiction (including one providing for nationwide service of process) would not control following the removal of a case from state court.

Indeed, we have suggested for this reason that the doctrine of derivative jurisdiction does not apply to defects in personal jurisdiction.    In *Aguacate Consolidated Mines, Inc., of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523 (5th Cir. 1978), the plaintiff filed suit in Georgia state court, and the defendant removed the action to federal court.  The Georgia district court, applying the Georgia long-arm statute, concluded that it lacked personal jurisdiction over the defendant and dismissed the case. *See id*. at 524.  The plaintiff filed a motion for reconsideration, asking the Georgia district court to transfer the case to an Alabama district court with personal jurisdiction over the defendant, and the Georgia district court decided that transfer was appropriate. *See id*.  The Alabama district court nevertheless dismissed the case, concluding that the Georgia district court "could not transfer a case under 28 U.S.C. § 1406(a) without first acquiring personal jurisdiction." *Id*.  On appeal, we reversed and rejected the defendant's argument based on the doctrine of derivative jurisdiction: "Although the jurisdiction of a federal court after removal is, in a limited sense, derivative, removed actions become subject to federal rather than state rules of procedure." *Id*. at 525.  We therefore allowed the transfer to take place even though the Georgia district court (and presumably the Georgia state court prior

18

to removal) did not have personal jurisdiction over the defendant. *See id*. *See also Bentz v. Recile*, 778 F.2d 1026, 1027 (5th Cir. 1985) ("Precedent of this court supports transfer of a case pursuant to section 1406(a) or section 1404(a) from a federal Court lacking personal jurisdiction to one possessing it, even if the case was removed from a state court that itself lacked personal jurisdiction.").

Fourth, we agree with the Third Circuit's decision in *Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160, 168–69 (3d Cir. 1976) (reasoning that the doctrine of derivative jurisdiction requires dismissal only when the state court lacks subject-matter jurisdiction over the case, but holding that the plaintiff's failure to comply with the applicable state statute of limitations could not be cured or remedied in federal court after removal). As the Third Circuit explained, a "clear purpose of the derivative limitation" is that "federal courts not entertain, on removal, actions that the state court could not entertain in the first instance." *Id.* at 168. *Cf. Welsh v. Cunard Lines, Ltd.*, 595 F. Supp. 844, 845–46 (D. Ariz. 1984) (stating that the doctrine of derivative jurisdiction is "an archaic and unhelpful principle," and limiting its application by noting that "while [it is] still the law, [it] should be carefully confined to cases where precedent unquestionably compels that it be applied").

Fifth, the leading federal court treatises take the position that the doctrine of derivative jurisdiction is limited to cases in which the state court lacks subject-matter

19

jurisdiction. *See* 14C Federal Practice & Procedure § 3722 ("The derivative-jurisdiction principle pertains only to subject-matter jurisdiction."); 16 Daniel Coquillette et al., Moore's Federal Practice § 107.23 (3d ed. 2020) ("Prior to the Judicial Improvements Act of 1985, a case could not be removed to federal court if the state court in which it had been initiated would not have had subject-matter jurisdiction over the action."); 1A Federal Procedure, Lawyers Edition § 1.723 (Oct. 2020 update) (the doctrine of derivative jurisdiction "is properly applied, if to anything, to cases involving a defect in the state court's subject-matter jurisdiction over the case"). Their view is not, of course, dispositive, but it is certainly informative, and we find it persuasive.

Sixth, subject-matter jurisdiction and personal jurisdiction differ in an important respect. The former (which is structural) cannot be waived or conferred by the parties, while the latter (which is personal) can. *Compare Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850–51 (1986), *with Ins. Co. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). We realize that this difference is not a game-breaker, for it does not adequately explain why the doctrine of derivate jurisdiction would deprive a federal court of jurisdiction in a case where subject-matter jurisdiction is exclusively federal. But it does provide an additional reason for not extending the doctrine to the realm of personal jurisdiction.

The district court, then, could exercise jurisdiction following removal notwithstanding the state court's lack of personal jurisdiction over the defendants under Alabama's long-arm statute. And it could look to Bankruptcy Rule 7004(d) to decide whether personal jurisdiction existed.[4]

## C

Bankruptcy Rule 7004(d) permits nationwide service of process: "The summons and complaint and all other process except a subpoena may be served anywhere in the United States." In this circuit, when a federal statute or rule "provides for nationwide service of process, it becomes the . . . basis for federal jurisdiction." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997).

When the district court applies Bankruptcy Rule 7004(d) on remand, it will need to ensure that the exercise of jurisdiction over the defendants is "not unconstitutionally burdensome" under the Fifth Amendment. *See id.* at 947. The court must "examine a defendant's aggregate contacts with the nation as a whole rather than [its] contacts with the forum state in conducting the Fifth Amendment analysis." *Id.* (citation omitted). Although a defendant's contacts with the United States do "not automatically satisfy the due process requirements of the Fifth

---

[4] Given our conclusion about the inapplicability of the doctrine of derivative jurisdiction, we need not address Mr. Reynolds' argument that there was personal jurisdiction over the defendants under Alabama's long-arm statute.

Amendment," the burden is on a defendant "to demonstrate that the assertion of jurisdiction in the forum will make litigation so gravely difficult and inconvenient that [it] unfairly is at a severe disadvantage in comparison to [its] opponent." *Id.* at 947–48 (citations and internal quotation marks omitted). If a defendant "makes a showing of constitutionally significant inconvenience, jurisdiction will comport with due process only if the federal interest in litigating the dispute in the chosen forum outweighs the burden imposed on the defendant." *Id.* at 948 (describing the factors a court should consider). *See also Managed Care Advisory Group, LLC v. Cigna Healthcare, Inc.*, 939 F.3d 1145, 1158 (11th Cir. 2019) (articulating the same standard).

There is one final matter. Our decision in *Aguacate Consolidated Mines*, 566 F.2d at 525, makes it clear that the district court could consider Mr. Reynolds' alternative request for a transfer to the Southern District of New York pursuant to 28 U.S.C. § 1406 even if there was no personal jurisdiction over the defendants under Alabama's long-arm statute. So, if the district court on remand decides that the exercise of personal jurisdiction under Bankruptcy Rule 7004(d) would violate the Fifth Amendment as to some or all of the defendants, it will need to turn to the § 1406 motion to transfer. The defendants are correct that *Aguacate Consolidated Mines* does not mandate a transfer, but it does require consideration of Mr. Reynolds' motion.

22

## IV

The district court's dismissal of Mr. Reynolds' complaint pursuant to the doctrine of derivative jurisdiction is reversed, and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**