**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-12737

Non-Argument Calendar

_____

SEAN T. WRIGHT,
   as individual,

                                                    *Plaintiff-Appellant,*

*versus*

15TH DISTRICT PALM BEACH COUNTY STATE
ATTORNEY'S OFFICE,
PALM BEACH COUNTY SHERIFF'S OFFICE,
   State Government Entities,
FRANK DI ORSINI,
   PBSO Sherriff, Official and Individual Capacity,
SHERIFF OF PALM BEACH COUNTY,

                                                    *Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:24-cv-81145-AMC

_____

Before JORDAN, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

Sean T. Wright, proceeding pro se, appeals the district court's orders dismissing his claims under 42 U.S.C. § 1983 against the 15th District Palm Beach County State Attorney's Office ("State Attorney's Office"), dismissing his amended complaint against the Palm Beach County Sheriff's Office ("PBSO") and Deputy Frank Di Orsini, and denying his motion for a temporary restraining order ("TRO") against Di Orsini.  First, he argues that the district court erred in concluding that his claims against the State Attorney's Office were barred by Eleventh Amendment immunity.  Second, he argues that the district court erred in dismissing his amended complaint because he complied with the court's instructions and pro se form in amending his complaint, he had Article III standing to pursue his claims, the district court failed to hold an evidentiary hearing, and the district court misapplied various legal standards.  Third, he argues that the district court erred in denying his motion for a TRO against Di Orsini and in failing to hold an evidentiary hearing on the motion.

Because we write only for the parties who are already familiar with the facts, we set out only such facts as are relevant to the legal issues.

## I. DISCUSSION

*A. Eleventh Amendment Immunity*

We review de novo whether a party is entitled to Eleventh Amendment immunity. *Barnes v. Zaccari*, 669 F.3d 1295, 1302 (11th Cir. 2012). "We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim," accepting "a complaint's well-pleaded allegations as true and draw[ing] all reasonable inferences in the plaintiff's favor." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1277 (11th Cir. 2025).

"A *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed." *Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017). Nonetheless, "a *pro se* pleading must still suggest that there is at least some factual support for a claim," *id.*, and "we cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action," *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

"An amended complaint supersedes and replaces the original complaint." *Reynolds v. Behrman Cap. IV L.P.*, 988 F.3d 1314, 1319 (11th Cir. 2021). However, where a district court dismisses a claim and repleading that claim in an amended complaint would be "futile," the plaintiff may omit the claim from the amended complaint without waiving the right to challenge its dismissal on appeal. *Id.*

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (quotation marks omitted). This immunity extends to state agencies and to "arm[s] of the State," but it "does not extend to independent entities, such as counties or municipalities." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231 (11th Cir. 2000); *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

In determining whether an entity is an arm of the state, the Supreme Court has instructed courts to focus on (1) whether the State structured the entity as part of itself or as legally independent, (2) whether the entity is liable for its own judgments or whether the State is formally liable, and (3) the degree of control the State exerts over the entity, though courts should consult this final factor with "caution" because "ultimate control of every state-created entity resides with the State." *Galette v. N.J. Transit Corp.*, No. 24-1021, slip op. at 10, 12 (U.S. Mar. 4, 2026) (quotation marks omitted); *see also Manders*, 338 F.3d at 1309 (defining four factors relevant to assessing whether an entity is acting as an arm-of-the-state: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity"). "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged

when taking the actions out of which liability is asserted to arise." *Manders*, 338 F.3d at 1308.

In Florida, state attorneys are elected in each judicial circuit, Fla. Stat. § 27.01, and each state attorney is required to "appear in the circuit and county court within his or her judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions, civil or criminal, in which the state is a party," subject to certain exceptions, Fla. Stat. § 27.02(1). While Florida has expressly waived its immunity under Fla. Stat. 768.28 for lawsuits raising traditional tort claims, it has not consented to suit in federal court based on "constitutional torts" under § 1983. *Gamble v. Fla. Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1514–15 (11th Cir. 1986).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment "for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). The *Ex parte Young* exception applies to actions against state officials rather than "States or their agencies, which retain their immunity against all suits in federal court." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Prosecutors also enjoy absolute immunity from a civil suit for damages under § 1983 for activities that are intimately associated with the judicial phase of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). This "includes actions preliminary

6                    Opinion of the Court                    25-12737

to the initiation of a prosecution and actions apart from the courtroom," and it extends to a prosecutor's "out-of-court effort to control the presentation of a witness' testimony." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1142 (11th Cir. 2017) (quotation marks omitted). It does not extend to actions that are not taken in a prosecutor's role as an advocate. *Id.*

Section 1983 imposes liability on "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 does not override a State's Eleventh Amendment immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63 (1989). Additionally, "[r]espondeat superior or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Here, as an initial matter, Wright did not waive his right to appeal the district court's dismissal of his claims against the State Attorney's Office by filing an amended complaint that omitted these claims. *Reynolds*, 988 F.3d at 1319. Once the district court found that the State Attorney's Office was entitled to Eleventh Amendment immunity and instructed Wright that "[a]ny future pleading shall not name the [State Attorney's Office] as a Defendant," Wright's inclusion of these claims in an amended complaint would have been "futile." Consequently, Wright was not required to include these claims in his amended complaint to preserve a

challenge to the district court's Eleventh Amendment immunity findings on appeal. *Id.* at 1319.

The State Attorney's Office was acting as an arm of the State of Florida in carrying out the functions described in Wright's complaint—including, e.g., prosecuting a case on behalf of the State against Darius, Wright's neighbor, and issuing subpoenas to Wright. *Manders*, 338 F.3d at 1308–09; *Galette*, No. 24-1021, slip op. at 10, 12; Fla. Stat. § 27.02(1). Because Florida has not waived its immunity for § 1983 claims, Wright's claims against the State Attorney's Office were barred by the Eleventh Amendment. *See Gamble*, 779 F.2d at 1514–15. Moreover, to the extent that Wright sought prospective injunctive relief against the State Attorney's Office (even though his complaint only requested such relief against PBSO and Di Orsini), his claims would not fall under the *Ex parte Young* exception because he sued the State Attorney's Office itself rather than a state official, *see Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146.

Moreover, to the extent that Wright's claims against the State Attorney's Office were based solely on the actions of employees (e.g., stealing mail from his mailbox or harassing him), they fail for an independent reason: the State Attorney's Office could not be held vicariously liable for the conduct of employees under § 1983. *City of Canton*, 489 U.S. at 385. Lastly, because the State Attorney's Office was entitled to Eleventh Amendment immunity, Wright's arguments regarding qualified immunity and prosecutorial immunity are immaterial.

For these reasons, the district court did not err in dismissing Wright's complaints against the State Attorney's Office based on Eleventh Amendment immunity.

*B. Dismissal Based on Standing*

"Article III standing is a threshold jurisdictional question that we review de novo." *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1356 (11th Cir. 2021) (quotation marks omitted).

Article III of the Constitution limits federal courts to adjudicating "Cases" and "Controversies." U.S. Const. art. III, § 2; *Mack*, 994 F.3d at 1356. "To determine whether a dispute satisfies Article III's case-or-controversy requirement, courts have established three justiciability doctrines, [p]erhaps the most important of which is the standing doctrine." *Mack*, 994 F.3d at 1356 (alteration in original) (quotation marks omitted). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact requires the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks omitted). "Absent exceptional circumstances, a third party does not have standing to challenge injury to another party." *Miccosukee*, 226 F.3d at 1230.

Here, the district court did not err in dismissing several of Wright's claims for lack of standing. As to Count One, Wright did not clearly allege how he was injured by a state judge's and assistant state attorney's failure to request his video evidence in a prosecution against his neighbor, and Wright therefore lacked Article III standing as to this portion of his claim. *Lujan*, 504 U.S. at 560; *Miccosukee*, 226 F.3d at 1230. Additionally, to the extent that Wright may have been injured by wrongfully issued subpoenas, he failed to allege facts showing how these subpoenas were "fairly traceable to the challenged conduct of" the named defendant—specifically, PBSO. *Spokeo*, 578 U.S. at 338. The plain terms of Wright's amended complaint alleged that the state judge and assistant state attorney, rather than PBSO, were responsible for issuing the subpoenas. Thus, the district court correctly determined that Wright lacked Article III standing as to Count One and properly dismissed it without prejudice. *See Spokeo*, 578 U.S. at 338; *McGee*, 727 F.3d at 1326. Regarding Count Four, Wright failed to allege how he was injured by the filing of a fraudulent affidavit in a prosecution against his neighbor, and the district court therefore properly dismissed this claim for lack of Article III standing. *Lujan*, 504 U.S. at 560; *Miccosukee*, 226 F.3d at 1230. Wright also failed to allege facts showing that he was injured by Di Orsini's evidence tampering in the criminal case against Darius for the purposes of Article III standing. *Lujan*, 504 U.S. at 560; *Miccosukee*, 226 F.3d at 1230.

*C. Dismissal for Failure to State a Claim*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mere legal conclusions "are not entitled to the assumption of truth"; instead, "they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Generally, "[a] court's review on a motion to dismiss is limited to the four corners of the complaint," *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quotation marks omitted), along with any exhibits attached to it, *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023). A court may also consider materials that are incorporated by reference into the complaint, which requires that the document be referenced in the complaint, that it be central to the plaintiff's claim, and that its contents be undisputed. *Id.* Video footage may be incorporated by reference into a complaint. *See id.* at 1277. A motion to dismiss for failure to state a claim "always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997).

While "municipalities and other local governmental bodies are 'persons' within the meaning of § 1983," *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997), § 1983 does not authorize vicarious liability against a municipality or local government body, *Smothers v. Childers*, 159 F.4th 922, 930 (11th Cir.

2025).  Instead, to hold a local government liable under § 1983, a plaintiff must establish that his rights were violated pursuant to a "custom" or "policy" of the local government.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  A plaintiff may alternatively show that "a municipal official with final policy-making authority in the area of the act or decision ma[de] the challenged act or decision."  *Smothers*, 159 F.4th at 930–31 (quotation marks omitted).  A local government may also be held liable under § 1983 for the inadequate training of its employees "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *Canton*, 489 U.S. at 388.  A suit against a county sheriff in his or her official capacity is in effect a claim against the county itself.  *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020).

To succeed on a custom or policy theory against a local government, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  Furthermore, "[f]or a custom or policy theory to be actionable, the custom or policy must be so well-settled and pervasive that it assumes the force of law; it must be persistent and widespread, so the county had either actual or constructive knowledge of it."  *Smothers*, 159 F.4th at 931.  "Normally[,] random acts or isolated incidents are insufficient to establish a custom or policy."  *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

There is "no general right, based upon either the Constitution or federal statutes, to the provision of medical treatment and services by a state or municipality." *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F.2d 1030, 1032 (11th Cir. 1987). However, the existence of a custodial relationship or other special relationship between an individual and a government may trigger a constitutional duty of the government to provide medical services. *Id.* at 1034. Custodial relationships arise from incarceration "or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves." *White v. Lemacks*, 183 F.3d 1253, 1257 (11th Cir. 1999).

In the non-custodial setting, we have suggested that it might be possible for an official's deliberate indifference to constitute a substantive due process violation, but only where "the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003); *see Waldron v. Spicher*, 954 F.3d 1297, 1310 (11th Cir. 2020). *But see L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1330 (11th Cir. 2020) ("We doubt that deliberate indifference can ever be 'arbitrary' or 'conscience shocking' in a non-custodial setting."). Such a claim would require a showing, "at the very least, . . . of deliberate indifference to an extremely great risk of serious injury to someone in Plaintiffs' position." *Waddell*, 329 F.3d at 1306.

Qualified immunity protects officers engaged in discretionary functions from civil liability under § 1983 if the officer's actions

do "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) (quotation marks omitted). An officer raising a defense of qualified immunity must show that he or she acted within the scope of his or her discretionary authority, such that the officer acted in accordance with his or her job-related duties and within the scope of his or her authority. *Huggins*, 151 F.4th at 1278. If the officer meets this burden, the burden shifts to the plaintiff to show that the officer (1) violated a statutory or constitutional right that was (2) clearly established at the time of the alleged misconduct. *Id.* at 1278.

"The Fourth Amendment, which prohibits unreasonable searches and seizures by the government, is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises." *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006). Additionally, "[p]roperty interests . . . are not created by the Constitution" and are instead created and defined "by existing rules or understandings that stem from an independent source such as state law." *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). A plaintiff may not ground a substantive due process claim merely in the denial of a state-defined property right. *See Greenbriar Vill., L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1262 (11th Cir. 2003).

A pro se plaintiff "must be given at least one chance to amend [his] complaint before the district court dismisses the action

with prejudice" unless the plaintiff does not wish to do so or allowing him to do so would be "futile." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132–33 (11th Cir. 2019) (quotation marks omitted). "Typically, where standing is lacking, a court must dismiss the plaintiff's claim without prejudice." *McGee v. Solic. Gen. of Richmond Cnty.*, 727 F.3d 1322, 1326 (11th Cir. 2013).

The district court did not err when it dismissed Wright's complaint for failure to state a claim. In Count Two, Wright's allegations that PBSO Deputy Coleman threatened him and "force[d] [him] to give a statement" even after he told Deputy Coleman he was injured may have been sufficient to show a custodial relationship for the purposes of a Fourteenth Amendment deliberate-indifference claim. *Wideman*, 826 F.2d at 1034. Indeed, liberally construing Wright's allegations, *see Waldman*, 871 F.3d at 1289, Deputy Coleman "deprive[d] [Wright] of [his] liberty" and his ability to take care of himself by preventing him from leaving until he gave a statement, *see White*, 183 F.3d at 1257. Nonetheless, Wright did not name Deputy Coleman as a defendant in Count Two. Instead, he named PBSO and Sheriff Bradshaw in his official capacity, and, as a result, his claim was subject to the requirements of *Monell*. *Barnett*, 956 F.3d at 1296. Because Wright failed to allege any facts showing that Deputy Coleman was inadequately trained or acted pursuant to a "custom" or "policy" of PBSO, much less one that was "so well settled and pervasive that it assume[d] the force of law," the district court properly dismissed Count Two. *See Monell*, 436 U.S. at 694; *Smothers*, 159 F.4th at 931; *Canton*, 489 U.S. at 388.

Wright's Count Three claim regarding the search of his mailbox and removal of his mail by PBSO employees—which also named PBSO and Sheriff Bradshaw in his official capacity—similarly fails under *Monell*. *Monell*, 436 U.S. at 694; *Smothers*, 159 F.4th at 931. Wright failed to allege how the conduct of the PBSO employees on a single, isolated instance on December 9, 2021, was performed pursuant to a "custom" or "policy" of PBSO that was "so well settled and pervasive that it assume[d] the force of law," *see Smothers*, 159 F.4th at 931; *Depew*, 787 F.2d at 1499, or resulted from inadequate training, *see Canton*, 489 U.S. at 388.

As for the portion of Wright's claims against PBSO and Sheriff Bradshaw in Counts Five through Seven, Wright again failed to allege facts sufficient to satisfy *Monell*, because he did not indicate that PBSO deputies lacked adequate training or were acting pursuant to a well-settled custom or policy when they trespassed on his property, threatened him, harassed him, disturbed his quiet enjoyment of his property, or performed unlawful searches. *Smothers*, 159 F.4th at 931; *Monell*, 436 U.S. at 694; *Canton*, 489 U.S. at 388. Moreover, Wright's Fourth Amendment interests were not implicated merely by PBSO officers and Di Orsini entering his property to serve subpoenas. *See Taylor*, 458 F.3d at 1204.

Wright's claims against Di Orsini individually in Counts Five through Seven also fail. Even assuming that Di Orsini was not entitled to qualified immunity, Wright's vague assertions that Di Orsini engaged in a "HARASSMENT campaign," threatened him, violated a state no-contact order, and engaged in evidence tampering

in Darius's case did not plausibly allege the violation of Wright's federal rights for the purposes of § 1983. 42 U.S.C. § 1983; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 679.  Similarly, Wright's conclusory assertions that Di Orsini conducted "illegal searches" of his property, without accompanying factual allegations as to the nature of these searches or whether Di Orsini entered Wright's property at all (rather than, e.g., merely "[b]locking . . . a [p]rivate [g]ate" to the property), did not adequately state a Fourth Amendment violation.  *Iqbal*, 556 U.S. at 679.  And while Di Orsini's disturbance of Wright's right to quiet enjoyment of his property may have violated a state-defined property right, it did not violate a federal right for the purposes of § 1983.  *Roth*, 408 U.S. at 577; *Greenbriar Vill.*, 345 F.3d at 1262.

Wright contends that the district court abused its discretion in failing to conduct an evidentiary hearing to view his video and audio evidence before dismissing his claims.  But the court did not need to conduct an evidentiary hearing to resolve the "pure[] legal question" of whether Wright's amended complaint was subject to dismissal.  See *Chudasama*, 123 F.3d at 1367.  Indeed, there were "no issues of fact" to resolve at an evidentiary hearing because, at the motion to dismiss stage, the court was required to assume that Wright's allegations in his complaint and his characterizations of his video and audio evidence were true. *See id.*  Moreover, contrary to Wright's assertions that the district court failed to honor his status as a pro se party, *Waldman*, 871 F.3d at 1289, the court liberally read his pleadings, attempted to group his allegations into cognizable claims, and gave him a chance to replead his complaint before

dismissing several of his claims with prejudice. *Silberman*, 927 F.3d at 1132. Similarly, Wright's mere compliance with the court's instructions and the instructions in the pro se § 1983 form could not cure his otherwise deficient claims. *Bilal*, 981 F.3d at 911.

### D. Temporary Restraining Order

We review the denial of a motion for a temporary restraining order or preliminary injunction for an abuse of discretion. *Long v. Sec'y, Dep't of Corr.*, 924 F.3d 1171, 1175 (11th Cir. 2019).

Courts consider four factors in determining whether a temporary restraining order is warranted, "which are whether the movant has established: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." *Id.* at 1226.

Here, for the reasons explained above, Wright failed to establish a substantial likelihood of success on the merits of his claims against Di Orsini, and the district court therefore did not err in denying his motion for a TRO. Moreover, the district court did not need to hold an evidentiary hearing on Wright's motion because, even accepting Wright's characterizations of his video and audio

evidence, his claims against Di Orsini still would not adequately allege the violation of a federal right for the purposes of § 1983.

**AFFIRMED.**